UNION INDEMNITY INSURANCE CO.
OF NEW YORK

v.

CERTAIN UNDERWRITERS AT
LLOYD'S, et al.

C.A. No. H–83–4324.

United States District Court,
S.D. Texas,
Houston Division.

July 31, 1985.

Innes A. Mackillop, Brown, Sims & Ayre, Houston, Tex., for plaintiff.

Ed Bluestein, Jr., Fulbright & Jaworski, Houston, Tex., for defendants.

### ORDER

CARL O. BUE, Jr., District Judge.

Plaintiff brought this action for a declaratory judgment pursuant to 28 U.S.C.

§ 2201, for the purpose of determining the obligations of plaintiff and defendants as hull underwriters under the insurance policies with respect to contribution to a settlement involving the assured. Soon thereafter, cross motions for summary judgment were filed and argued to the Court. Simply stated, plaintiff contends that because a "total loss" occurred in this case, all hull underwriters, regardless of any priority under the policies that they may have in the event of a partial loss, are obligated to respond to the maximum monetary limits of their respective policies.[1] In response, defendants contend that plaintiff, as the primary hull insurer, has an obligation, regardless of the extent of the loss, which requires the exhaustion of its policy limits before defendant excess insurers are obligated to pay. Accordingly, the critical issue in this case which appears to be one of first impression is whether in a hull insurance case in which a total loss occurs and is later compromised each hull underwriter, whether primary or excess, should be required by policy or by law to share ratably in the satisfaction of the settlement.

After careful consideration of the facts of the case, the insurance policies in question, argument of counsel, and relevant law, this Court is of the opinion that plaintiff's motion for summary judgment should be denied and that defendants' cross-motion for summary judgment should be granted for the reasons discussed below.

### Background

The F/V DECO XX, owned by Duzich Trawlers, Inc., sank in heavy water in the Gulf of Mexico in April of 1982 and could not be salvaged. Thereafter, the insured made a claim for a "total loss". At the time of the loss, the DECO XX was insured under several policies, one of which was issued by plaintiff and the remainder of which were issued by defendants. The agreed value of the vessel as stated in each of these policies was $475,000. The owner's claim was compromised for $300,000.

In order to fund the settlement, plaintiff, the primary hull insurer, paid $250,000, the limit of its policy. One set of defendants, Certain Underwriters at Lloyd's, whose policy had a limit of $10,000 in excess of $250,000, paid its limit. A second set of defendants, Certain Underwriters at Lloyd's together with the member companies, whose policies had a combined limit of $215,000 in excess of $260,000, paid the remainder of the settlement, or $40,000.

### Summary Judgment Standards

In order to succeed on a motion for summary judgment, a movant must demonstrate that there is no genuine issue as to any material fact, and that the law demands a judgment in the movant's favor based on those undisputed facts. FED.R. CIV.P. 56(c); *Darden v. C.H. Heist Corp.,* 743 F.2d 1135, 1137 (5th Cir.1984). Plaintiff and defendants are in agreement as to the material facts in this case—the existence of the insurance policies, the total loss of the F/V DECO XX and the subsequent settlement. The only question remaining is the legal one of plaintiff's right, if any, to contribution from defendants. Therefore, the parties concur that this case is a proper one for summary judgment.

### The Law

■ For an insurer to be entitled to equitable contribution from other insurers, the policies in question must insure the same party, the same interest, and the same risk. *Reliance Ins. Co. v. Allstate Indem. Co.,* 514 F.Supp. 486 (E.D.Penn. 1981), *aff'd,* 681 F.2d 808 (3rd Cir.1982). This is known as double or overlapping insurance. *Brockway-Smith Co. v. Boston & Maine Corp.,* 497 F.Supp. 814, 823 (D.D. Mass.1980); 6 Appleman, *Insurance Law and Practice* § 3903 (1972). If one insurer pays the insured's entire loss in such a situation, that insurer is entitled to pro rata

---

**1.** Plaintiff admits "that in regard to partial losses to the F/V DECO XX (i.e. damage to the hull not resulting in a 'total loss') Plaintiff's policy would operate as primary insurance." (Plaintiff's Motion for Summary Judgment at 7).

contribution from any other insurer who issued double insurance. *Reliance Ins. Co.*, 514 F.Supp. at 486, 487. The purpose of the doctrine of equitable contribution is to prevent the insured from making a double recovery. *See* 1 Arnold, *Law of Marine Insurance and Average,* § 433, (16th ed. 1981).

■ Primary insurance coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. *Whitehead v. Fleet Towing Co.*, 110 Ill.App.3d 759, 66 Ill.Dec. 449, 442 N.E.2d 1362 (Ill. App.Ct.1982). An excess policy is one that provides that the insurer is liable for the excess above and beyond that which may be collected on primary insurance. *Brownsville Fabrics, Inc. v. Gulf Ins. Co.*, 550 S.W.2d 332, 337 (Tex.App.—Corpus Christ 1977, writ ref'd n.r.e.). In a situation in which there are primary and excess insurance coverages, the limits of the primary insurance must be exhausted before the primary carrier has a right to require the excess carrier to contribute to a settlement. *U.S. Fire Ins. Co. v. Lay*, 577 F.2d 421 (7th Cir.1978), *reh'g denied; see also Valentine v. Aetna Ins. Co.*, 564 F.2d 292, 296 (9th Cir.1977); *Travelers Indem. v. Certain Underwriters at Lloyd's*, 566 F.Supp. 267, 270 (E.D.La.1983). In such a situation, the various insurance companies are not covering the same risk; rather, they are covering separate and clearly defined layers of risk. The remote position of an excess insurer thus greatly reduces its chance of exposure to a loss. This reduced risk is generally reflected in the cost of the excess policy.

In the instant case, plaintiff's insurance policy is unmistakably primary and defendants' are excess. Not only are defendants' policies labeled "excess", but they recite, in addition, that they follow the terms and conditions of the underlying coverage. Clearly, in this situation, each underlying policy must be exhausted before the next layer of excess insurance is required to contribute. There is no danger of the insured making a double recovery because each insurer is liable only to the limits of its policy.

Nevertheless, plaintiff contends that the case at bar presents a situation analogous to a co-insurance scenario. Stated simply, plaintiff asserts that where, as here, the aggregate of the policy limits equals the agreed insured value, the nature of the contractual obligation owed by each underwriter to the assured in a total loss situation is identical, except as to the difference in policy limits. In other words, all underwriters may be said to insure the same party at the same time and against the same risk.[2] However, plaintiff cites no authority in support of this contention, nor does the Court following its own research find any.

Instead, plaintiff attempts to support its position *inter alia* by analogy to the effects of a compromised total loss involving other types of insurance. As its single authority on this point, plaintiff quotes Buglass, *Marine Insurance and General Average in the United States,* pp. 112–113 (2d ed. 1981) as follows:

> When a claim for constructive total loss is compromised for, say, 90% of the agreed or insured value in the basic hull policy, any other total loss underwriters must respond similarly (that is to say, any underwriters insuring increased value, disbursements or freight, must also respond for 90% of the sum for which they insure). In other words, any compromise settlement reached by the assured with his basic hull underwriters carries with it the other total loss insurances.

However, insurance for increased value, disbursements and freight does not insure the same interest as hull insurance. *Brown v. Merchant's Marine Ins. Co.*, 152 Fed. 411, 413 (9th Cir.1907). While those coverages may be bound by the percentage of loss represented by the settlement

---

**2.** Plaintiff agrees that in a partial loss situation the policies at issue do not provide coverage of · exactly the same nature. (Plaintiff's Motion for Summary Judgment at 10).

achieved by the hull underwriter, those coverages do not contribute to lessen the hull underwriter's obligation. In the case *sub judice*, · the insurers do insure the same interest—the hull—but they do not insure the same parts of the risk. In short, the authority cited by plaintiff, while undoubtedly accurate in its own context, is inapposite to the case at bar.

Plaintiff finds further support for his contentions in *Brown* in a quote taken from Arnould, *Marine Insurance* § 1215 (7th ed.) which reads as follows:

> Upon abandonment, each of the underwriters participates in the benefits of the transfer by sharing in the proceeds of the salvage according to the proportion which the amount of his subscription bears to the whole value of the thing insured, and this without regard to the date of the different subscriptions, or the priority of the policies, if more than one.

152 Fed. at 413. In *Brown*, the Court held that the underwriters of a disbursement policy should rank equally with the other underwriters in the distribution of the fund in court. That Court neither analyzed nor ruled upon the issues raised herein.

The distinction between hull insurance and disbursements, discussed previously by this Court, is explained in that opinion as well:

> The object of insurance on disbursements is to insure the shipowner the recovery of additional sums beyond the amount covered by his insurance on ship and freight, and it is made against total loss only.... [P]olicies on disbursements ... are designed to cover a variety of interests not covered by policies in the ordinary form.... 'Disbursement' policies are often issued where the hull is fully covered by other policies.

*Id.* at 413. That being so, the holding and analysis in *Brown* is inapplicable to the instant case involving the respective liabilities amongst primary and excess hull underwriters.

■ Plaintiff argues that if the Court denies the relief sought by plaintiff by not allowing the primary carrier to recover pro rata contribution from any excess carrier under the facts of this case, settlements will be discouraged. To the contrary, in this Court's view, requiring excess carriers to lessen a primary insurer's obligation would undoubtedly impair settlements, regardless of whether the loss is partial or total. The point was made in *Valentine:*

> If the existence of excess insurance relieved a primary insurer of its responsibility to negotiate and settle up to its policy limits in good faith, then the primary insurer would have a disincentive to settlement. Moreover, if during settlement negotiations the primary insurer is allowed to force the excess insurer to cover part of the primary's insurance exposure, the coverages and rate structures of the two different types of insurance—primary and excess—would be distorted, and excess insurance premiums would have to be adjusted. On the other hand, allowing an excess insurer to enforce a primary carrier's duty to negotiate and settle in good faith to the full limits of the primary carrier's policy does not add to or change that carrier's duties.

564 F.2d at 298. Indeed, courts in this Circuit as well have held that a primary insurance carrier owes a duty to its assured and to the excess insurer to settle the case in good faith. *Offshore Logistics Serv., Inc. v. Arkwright-Boston Mfr. Mut. Ins. Co.,* 469 F.Supp. 1099 (E.D.La.1979), *aff'd as mod,* 639 F.2d 1142 (5th Cir.), *reh. denied,* 647 F.2d 1121 (5th Cir.1981).[3] These principles should apply whether the loss in question is partial or total.

### The Policies

■ It is axiomatic that an insurance policy is a contract which expresses the law

---

**3.** Plaintiff contends that the rules of law governing hull insurance must be different from the rules of law for liability insurance. However, as they concern the issues in this case, the Court is of the opinion that there are no grounds to believe that such a distinction would be material; nor does plaintiff cite any legal authority in support of its contention.

between the contracting parties. As such, it must be enforced according to its terms when there is no ambiguity. *Gulf Oil Corp. v. Mobile Drilling Barge or Vessel,* 441 F.Supp. 1, 7 (E.D.La.1975), *aff'd,* 565 F.2d 958 (5th Cir.1978). In *Offshore Logistics,* the Fifth Circuit found the terms of the policy controlling. 639 F.2d at 1142. Similarly, in *Alcoa S.S. Co. v. Charles Ferran & Co.,* 443 F.2d 250, 255 (5th Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 94 (1971), the Fifth Circuit looked again to the intent and the wording of the primary and excess insurers when determining the issue at hand, and stated specifically:

> But we do not make this as a choice of law for general (or Louisiana) application. We do it in the context of this situation in which the insurance was a carefully dovetailed, integrated program in which each had significant interests at stake, often regardless of the ultimate outcome of a potential claim ...

The underwriters in the case at bar, too, had a carefully "dovetailed, integrated program in which each had significant interests at stake." Union as the primary underwriter had the first $250,000. One excess cover was based expressly upon the named primary policy and subject to all of its terms and conditions. It picked up liabilities in the amount of $10,000 in excess of $250,000. The remaining excess cover also was based expressly upon the named primary policy and subject to all its terms and conditions. It picked up liabilities in the amount of $215,000 in excess of $260,000.

Further, the Court notes that plaintiff makes provisions in its policy to cover divers circumstances which could arise in a "total loss case". Likewise, in defendants' policies, a costs clause is included, providing for the ratable contribution of costs in connection with any claim which the underwriters may require to be contested by the assured. Accordingly, it follows that plaintiff could have avoided the position that it now endures by making provision in its policy for pro rata contribution from defendants in the event of a total loss.[4] Having failed to do so, plaintiff cannot now ask this Court to read an ambiguity into an otherwise unambiguous contract.

### Conclusion

■ In this case, the Court has carefully considered all factual and legal arguments of counsel. Having done so, the Court is of the view that under the particular facts at hand, the defendants have no legal obligation to the plaintiff to contribute on a pro rata basis. Rather, plaintiff had a legal obligation to pay its assured $250,000, the limits of its policy, before the obligations of the excess carrier defendants under their excess policies were triggered.

Plaintiff seeks to invoke the doctrines of fairness and justice that are enforced through the Court's equitable powers. However, as one equitable maxim most aptly provides, "Equity follows the law." There being no law to support plaintiff's contentions, its prayer for equitable relief must be denied. Accordingly, plaintiff's motion for summary judgment is denied, and defendants' cross-motion for summary judgment is granted.

Contemporaneously entered herewith is the Court's Final Judgment, and the above Order is in support of that Final Judgment.

---

**4.** However, even this might not have mandated a decision in plaintiff's favor, since it appears to be the general rule that in instances in which two insurance policies afford coverage on a particular loss, and one contains a pro rata clause as to other insurance, while the other policy contains an excess clause, the policy containing the excess clause does not provide any coverage until the other policy is exhausted. *Early Settlers Ins. Co. v. Selected Risks Ins. Co.,* 346 F.Supp. 1272, 1277 (E.D.Va.1972); *Fireman's Fund Ins. Co. v. Underwriters Ins. Co.,* 389 F.2d 767 (10th Cir.1968).