**ROCOR INTERNATIONAL, INC., f/k/a Donco Carriers, Inc., Appellant,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Appellee.**

No. 04–96–00536–CV.

Court of Appeals of Texas, San Antonio.

May 28, 1999.

Mark L Kincaid, Kincaid & Horton, Jay Harvey, Winckler & Harvey, Austin, for appellant.

Gerald D. McFarlen, Brin & Brin, P.C., San Antonio, Thomas F. Nye, Linda C. Breck, Brin & Brin, P.C., Corpus Christi, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, CATHERINE M. STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, En Banc.

OPINION ON MOTION FOR RECONSIDERATION EN BANC

Opinion by: Chief Justice PHIL HARDBERGER, joined by Justice LÓPEZ and Justice STONE.

This case has been reheard by the court en banc. As a result, this court's opinion and judgment of January 14, 1998, are withdrawn. The opinion authored by Chief Justice Hardberger concludes that Rocor has a legal cause of action against its excess carrier, National Union, under two theories: (1) failure to settle in good faith under section 21.21 of the Texas Insurance Code; and (2) common law negligence. This is consistent with the original panel decision. The opinion authored by Justice Duncan agrees that Rocor has a legal cause of action under common law negligence but disagrees that there is a cause of action under section 21.21 of the

Texas Insurance Code. The dissenting opinion authored by Justice Green concludes that Rocor does not have a legal cause of action under either theory. The judgment signed by Justice Duncan is based upon the vote that Rocor has a cause of action for common law negligence (Chief Justice Hardberger, Justice López, Justice Stone, Justice Duncan, and Justice Rickhoff) and the vote that Rocor does not have a cause of action under article 21.21 of the Texas Insurance Code, and, therefore, is not entitled to attorney's fees (Justice Rickhoff, Justice Green, Justice Duncan, and Justice Angelini).

This suit arises from a drunk driving accident. In 1989, a truck driver employed by appellant, Rocor, struck and killed two highway patrol officers. Early in the investigation of the incident, it became apparent that the Rocor driver was drunk at the wheel. The families of the officers brought suit against Rocor. Recognizing its liability, Rocor put its primary and excess insurers on notice and anticipated an early settlement of the claims. Rocor's excess carrier, appellee National Union, took over settlement negotiations, but a settlement was not reached until March 1991, nearly two years after the accident occurred. Rocor sued National Union for expenses it incurred preparing a trial defense during the settlement negotiations, claiming that National Union had engaged in unfair insurance practices under article 21.21 of the Texas Insurance Code and under the Texas Deceptive Trade Practices Act (DTPA), and had made material misrepresentations to Rocor regarding the settlement. After the trial court granted National Union's motion for a directed verdict on the DTPA claim, the jury found that National Union had settled in bad faith and negligently, and it awarded Rocor $123,000 in damages, plus interest and attorney's fees. The trial court then granted National Union's motion for a judgment non obstante verdicto, or judgment n.o.v.

Rocor appeals, claiming in three points of error that 1) Rocor had standing under the Texas Insurance Code to sue for failure to act in good faith to settle a claim once liability became reasonably clear; 2) evidence at trial showed that National Union had made misrepresentations to Rocor; and 3) National Union had been negligent in failing to promptly negotiate a settlement. National Union brings three cross-points: 1) that the trial court improperly submitted a general question on negligence to the jury; 2) that the trial court erred, in its order granting judgment n.o.v., by interpreting the jury's verdict on damages; and 3) that there is no evidence, or insufficient evidence, to support the jury's assessment of attorney's fees.

We would reverse the judgment n.o.v. and affirm the jury's verdict in its entirety.

## SUMMARY OF FACTS

Rocor is a trucking company. In May 1989, a Rocor driver left a San Antonio bar after consuming four or five scotch and waters. A few hours later, the driver struck and killed two highway patrol officers who had stopped another drunk driver by the side of the road. Both officers were killed, and their families filed suit against Rocor.

Rocor's experienced attorney, Terrence Martin, conducted an initial investigation of the case to determine possible liability. This investigation included an interview with the truck driver, who claimed that he had not been driving the truck when the accident occurred but that someone else had gotten behind the wheel while the driver was asleep in the back. The driver had no memory of who that person might have been, and no such person was ever located. The driver was apprehended fleeing on foot from the scene of the accident.

On the basis of this interview and his inability to confirm the driver's story, Martin concluded, within a month of the accident, that Rocor was liable and that its liability could amount to millions of dollars, especially if the case were to go to trial. Rocor's vice president, Angel Arzaga, agreed, and he directed Martin to contact the plaintiffs and begin immediate settle-

ment negotiations. Martin did so. By January, the case was set for mediation.

Rocor approached negotiations with three sources of insurance protection: a $1–million deductible it carried on itself; a $1–million primary policy, under which Rocor retained the right to defend itself at trial; and an $8–million excess policy with National Union. This policy did not include a duty on National Union's part to defend Rocor in the event of a lawsuit.

Before mediation could begin, National Union advised that liability would likely reach the excess layer of coverage, took over all settlement negotiations and directed that mediation efforts be halted and that no offer be made to the plaintiffs. National Union's attorney, Stanley Renneker, assumed authority for resolution of the case, and Martin was relegated to acting at Renneker's direction.

In April 1990, National Union made its first offer to the plaintiffs: $2.8 million. This offer did not represent any National Union funds. Instead, it reflected Rocor's $1–million deductible, the $1–million National Guaranty policy, and the insurance policies of two other parties, the bar that had served the driver, and a "bobtail" policy that covered the driver when he was driving the rig outside the scope of his employment.[2] In short, National Union, in charge of negotiations, offered everyone's money but its own.

The attorney for the officers' families rejected the offer of $2.8 million, and in May 1990, the plaintiffs' attorney made a demand for a settlement that, including an offer to settle the children's estates separately, amounted to $6.3 million. This figure was harmonious with amounts Rocor and National Union had independently arrived at in evaluating the case. On May 10, there was agreement between Martin and Renneker that the value of the case was between $6 and $6.5 million. The upper end was more than the plaintiffs were demanding, so from that point on, all parties were essentially agreed on what the case should settle for. The attorneys estimated that were the case to go to trial, however, Rocor's liability, including possible punitive damages, could be assessed at up to $20 million. Almost another year would pass before the case settled.

The plaintiffs' attorney testified at trial that he believed almost from the beginning that the suit could be settled in the $6–million range. He acknowledged that sometime that spring, he sent a *"Stowers"* letter, demanding that the case be settled for the policy limits, or $10 million. This letter put National Union on notice that, if no settlement occurred, National Union could be liable, under Texas law, for any excess judgment against Rocor for failing to settle within the limits of the policy. *See G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 548 (Tex. Comm'n App.1929, holding approved) (holding insurer to duty to settle in good faith claims made within policy limits). According to trial testimony, the parties understood the import of this letter and understood that the plaintiffs' attorney would be willing to settle for less than $10 million. However, with no settlement in sight, Rocor's attorney, Martin, had no option other than continue to prepare for trial.

In a May 11, 1990, letter, Martin put National Union on notice that it should settle the case or assume Rocor's costs for preparing a trial defense. In this letter, Martin pointed out that the driver's version of events had not been substantiated and that Rocor faced serious liability if the case went to trial. National Union made no additional settlement offers.

In September 1990, Martin learned about the offer to settle the children's claims. The plaintiffs' attorney had made this offer five months earlier, in April, for $400,000 per child plus attorney's fees. Martin and Arzaga testified that they had

---

2. In the end, neither the bar's insurance nor the bobtail policy was used toward settlement of the claims.

no knowledge of it before September. The settlement was to come directly from Rocor's $1–million deductible and its primary coverage. Trial evidence shows that, following Martin's discovery of the offer, the children's case settled by October.

The entire case settled in March 1991. This was more than a year after National Union assumed responsibility for settlement. The case settled for $6.4 million, nearly exactly what both Martin and Renneker estimated it should have settled for in May 1990. Rocor brought suit to recover expenses it had used in preparing a trial defense after June 1, 1990.

## STANDARD OF REVIEW

This case comes before us on a judgment n.o.v. In moving for this judgment, National Union raised both deficiency of proof claims and claims that Rocor had no legal cause of action. Because the trial judge did not indicate upon which of these claims she granted the motion, Rocor must address and refute each of them. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991).

A judgment n.o.v. based on deficiency of proof is appropriate only when there is no evidence upon which the jury could have made its findings. *Dowling v. N.A.D.W. Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex. 1982). In reviewing such a judgment, we must view all facts and draw all inferences in a light most favorable to the nonmovant, and ignore all evidence and inferences to the contrary. *Bray v. McNeely*, 682 S.W.2d 615, 617 (Tex.App.—Houston [1st Dist.] 1984, no writ). A judgment n.o.v. based on a legal argument is proper only when the trial court can determine as a matter of law that the claim or defense is not viable. *See Fort Bend*, 818 S.W.2d at 397 (affirming judgment n.o.v. where court found defendant owed no legal duty to plaintiff).

3. National Union also based its motion on two grounds stemming from Rocor's original pleading that National Union had violated the Texas DTPA. However, the trial court granted a directed verdict to National Union on the DTPA claims and, as we read Rocor's appeal,

National Union based its motion for judgment n.o.v. on nine grounds. Although National Union claims that Rocor's three points of error fail to address each of these grounds, we find that they accurately encompass the judgment n.o.v. motion. The issues on appeal, presented here for clarity in different order from Rocor's brief, are: 1) does Rocor have a cause of action under the Texas Insurance Code for unfair business practices based on failure to settle in good faith; 2) does Rocor have a negligence cause of action against National Union; and 3) was there sufficient. evidence of material misrepresentations to Rocor by National Union that resulted in damages to Rocor? [3]

## BAD FAITH SETTLEMENT PRACTICES

Rocor alleged in its pleadings that National Union had violated article 21.21 of the Texas Insurance Code by not attempting in good faith to effectuate a fair settlement once liability was reasonably clear. *See* TEX.REV.STAT. ANN. art. 21.21 (Vernon 1981) (listing unfair practices under Insurance Code). National Union argues that Rocor has no private cause of action under article 21.21. We disagree.

Article 21.21 of the Texas Insurance Code enumerates unfair practices under the Code and the consequences of those acts. *Id.* Section 16 of article 21.21 creates a private cause of action for any person who has been injured by another's engaging in:

1) any of the practices declared to be unfair or deceptive by Section 4 of 21.21;

2) conduct defined in rules or regulations lawfully adopted by the Board under article 21.21 as unfair methods of competition and unfair or deceptive acts

Rocor does not complain of that ruling. Therefore, we do not address National Union's DTPA grounds and assume that the trial judge disposed of them in the directed verdict.

or practices in the business of insurance; or

3) any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful trade practice. *Id.* at § 16.

The Texas Supreme Court has held that an insured may bring a private action based on unfair settlement practices against its insurer under this provision. *Vail v. Texas Farm Bureau Mutual Ins. Co.*, 754 S.W.2d 129, 134 (Tex.1988). This is so under two alternate theories. First, section 16 creates a private cause of action for practices declared to be unfair or deceptive by a rule or regulation of the State Board of Insurance. The Texas Administrative Code, which codifies Insurance Board Orders, lists as unfair practices those that "are prohibited by Article 21.20 and Article 21.21 or by other provisions of the Insurance Code of Texas and by the rules and regulations of the State Board of Insurance." 28 TEX. ADMIN. CODE § 21.3(a) (West 1997). The Insurance Code does list among unfair practices the failure to settle in good faith. Article 21.21–2 of the Code *defines* as an unfair practice "not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear." *Id.* at art. 21.21–2.

As National Union points out, article 21.21–2 specifically precludes a private cause of action. However, the supreme court in *Vail* held that the *definition* of unfair practices provided by article 21.21–2 can be incorporated into section 21.3 and thus, into article 21.20. *Vail*, 754 S.W.2d at 134. In addition, although claims brought directly under article 21.21–2 will not be pursued unless the claimant can show that the complained of practice occurred with frequency, this frequency requirement does not exist when article 21.21–2 is being used to *define* unfair practices. *Id.*

Alternatively, Texas Administrative Code 21.3(b) prohibits practices that have been determined *by law* to be unfair or deceptive. 28 TEX. ADMIN. CODE § 21.3(b). In *Vail*, the Texas Supreme Court determined that the failure to conduct reasonable settlement negotiations was an unfair trade or practice. *Vail*, 754 S.W.2d at 135. In that case, the petitioners, the Vails, lost their home to fire during a period in which they were covered by a homeowner's policy. When their insurance company failed to pay their claim, the Vails sued for the full amount of the policy, plus damages under the DTPA. The supreme court held that an insurer owes a duty to its insured to deal fairly and in good faith in the processing of claims. *Id.* at 135

We find the situation before us analogous to *Vail.* Like the Vails, Rocor purchased insurance for financial protection. While Rocor had no right to expect that its insurer would settle blindly, it certainly had a right to expect that, once all parties agreed on liability and damages, settlement would follow with reasonable promptness, and thus Rocor's financial interests would be protected. This is especially true in this case, because National Union took over settlement negotiations and negotiated with Rocor's funds and those of Rocor's primary carrier.

We are aware that the supreme court's more recent case, *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145 (Tex.1994), holds that a third-party claimant has no cause of action as a third-party beneficiary of an insurance policy for unfair settlement practices. *Watson*, 876 S.W.2d at 150. However, while Rocor's suit incidentally arises from the settlement of a third-party claim, Rocor is not a third-party claimant. Rocor paid the premiums, and its claim is against the company it paid them to. Nor does Rocor seek to recover any portion of a settlement or policy proceeds it would have received but for the negligence of another's insurance company. Rocor has proceeded directly against its own insurance company for damages it received as a result of unnecessary delay. *Watson* does not stand for the principle that an insured may not sue for damages it directly sus-

tains due to its insurer's failure to timely settle. As Arzaga stated during his trial testimony:

Why am I complaining? I am complaining because they [National Union] had an opportunity to settle the case prior to June 1. And whether it is procrastination or whether it is by instructions, Mr. Renneker did not act in either of our best interests. I am the client. I am the person that they are supposed to come in and help when I need the help. That is why you get insurance. And these people did not.

National Union argues that the distinction between third- and first-party claimants is meaningless, because third-party claimants, who are not consumers under the DTPA, will never be able to sue under the DTPA. Thus, National Union argues, *Watson* must apply to *all* parties suing under the Insurance Code, whether or not they are third-party claimants. We are unable to find grounds for a principled distinction between bringing suit under the DTPA by incorporating the Insurance Code, as did the plaintiffs in *Vail,* and bringing suit directly under the Insurance Code, and we do not believe that *Vail* provides those grounds. It is true that third parties, as non-consumers, are precluded from bringing this cause of action. However, we believe that *Vail* and *Watson,* taken together, allow first-party claimants who qualify as consumers to bring causes of action based on the DTPA, as it incorporates provisions of the Insurance Code, and first-party plaintiffs who do not qualify as consumers under the DTPA to bring suit under the Insurance Code and the reasoning supplied in *Vail. See Webb v. International Trucking Co., Inc.,* 909 S.W.2d 220, 226 (Tex.App.—San Antonio 1995, no writ) (stating that both Insurance Code and DTPA grant relief for unfair practices). The supreme court, in *Watson,* stated, "*Vail* remains the law as to claims for alleged unfair claim settlement practices brought by insureds against their insurers." *Watson,* 876 S.W.2d at 149.

The DTPA is not available to Rocor. Rocor does not qualify as a "consumer" under the act. This is not because Rocor is a third-party claimant, but because it has assets of more than $25 million. *See* TEX. BUS. & COM.CODE § 17.45(4) (Vernon 1987) (defining "consumer" as "individual, partnership, corporation, this state, or a subdivision or agency of the state who seeks or acquires by purchase or lease any goods or services, except that the term does not include a business consumer that assets of $25 million or more"). Less wealthy consumers, often at a disadvantage in the bargaining for goods and services, are afforded extra protection in the DTPA, which, unlike the Insurance Code, prohibits unconscionable conduct, *id.* at § 17.50(3), and prohibits breach of warranties, *id.* at § 17.50(a)(2). Litigants such as Rocor, a large and financially healthy company, do not need such protections. However, this cannot mean that such litigants could not obtain relief for genuine injury inflicted by their insurance companies. The wealthy, as well as the poor, deserve the protection of the law.

National Union claims that the duty found under *Vail* does not apply to the insurer's handling of third-party claims. *See Maryland Insurance Co. v. Head Industrial Coatings & Serv., Inc.,* 938 S.W.2d 27, 28 (Tex.1996). In *Head,* the Texas Supreme Court held that an insurer bears no duty of good faith and fair dealing in the settlement of third-party claims against its insured. *Id.* The court reasoned that insureds were already protected from "refusal or mishandling of a third-party claim by his contractual and *Stowers* rights." *Id.* at 28–9

We believe this case is distinguished from *Head.* In *Head,* the insured had assigned its rights to sue his insurer to the third-party claimant, who then sued for the amount it had won against the insured in a non-jury trial based on an agreement between the parties. *Id.* at 26–7. Thus, the insured and the third-party claimant were attempting an end-run around the

general principle that third parties do not have standing to sue under the DTPA and Insurance Code. *See Watson,* 876 S.W.2d at 149; *see also Nguyen v. State Farm Lloyds, Inc.,* 947 S.W.2d 320 (Tex.App.— Beaumont 1997, writ denied) (applying *Head* to case where insured had assigned rights to third-party claimant).

In this case, on the other hand, the third-party claimant has already been paid, and Rocor is suing for its own damages, incurred as a result of the conduct of its insurer. The Insurance Code exists to protect individuals and businesses like Rocor from the misconduct of Texas insurers. When an insured seeks his own direct damages, incurred as the result of an insurance company's mishandling of a third-party claim, he or she is entitled to the protections of the Insurance Code.

Having determined that Rocor does have a cause of action under the Insurance Code, we also hold that Rocor's evidence was sufficient to prove that National Union engaged in unfair settlement practices. A cause of action for failure to settle in good faith is stated when it is alleged that coverage should have been "reasonably clear." *Universe Life Ins. v. Giles,* 950 S.W.2d 48, 54–6 (Tex.1997). Viewing, as we must, the evidence in a light most favorable to Rocor, and ignoring all contrary facts and inferences, we find that Rocor presented sufficient evidence to defeat a judgment n.o.v. Rocor demonstrated that all parties involved in the settlement understood that liability was obvious and that the potential for a high damages award against Rocor was great. Rocor presented testimony that, nearly one year before settlement, National Union's attorney had assessed liability at nearly exactly what it would eventually settle for. In addition, Rocor offered evidence that all the parties involved had arrived at a similar figure at about the same time. Rocor also presented evidence that National Union had been less than honest with Rocor during negotiations, even when National

Union was negotiating with Rocor's funds. Finally, Rocor demonstrated that the unnecessary delay caused damages: Rocor was forced to continue preparing a trial defense, even after its evidence shows that all parties could have settled.

## NEGLIGENCE

■ In its third point of error, Rocor claims that the trial court erred in granting National Union's motion for a judgment n.o.v. because Rocor had offered sufficient evidence that National Union had acted negligently in the settlement of these claims. While Rocor did not specifically plead common law negligence, its pleadings fairly raised the issue, there is ample evidence at trial to support the claim, and a question was presented to the jury on the issue without objection from National Union.[4] In addition, negligence was fairly debated at trial. Evidence on duty was presented; in fact, Renneker conceded that National Union had a duty to Rocor. Whether duty was breached was debated through evidence on what constitutes conduct. Finally, whether Rocor was damaged by National Union's conduct was debated through witness testimony. The issue of negligence was tried by consent. *See* Tex.R. Civ. P. 67 (when issues not raised by pleadings are tried by express or implied consent, they shall be treated as raised by the pleadings); *Sage Street Assoc. v. Northdale Construction Co.,* 863 S.W.2d 438, 445 (Tex.1993) (finding issues had been tried by consent where both sides advanced their positions at trial).

There was sufficient evidence to show that National Union has breached a common law duty of ordinary care. In the event that *Head* does prevent Rocor from recovering its own damages against its insurer under the Insurance Code, we hold that a negligence claim, based on the duty established in *Stowers,* is sufficient to overrule the judgment n.o.v.

---

4. National Union objected to the legal standard for negligence given in the jury charge, but not to the charge itself. We discuss the standard used later in this opinion.

■ Insurers owe a duty to their insureds to exercise ordinary care in attempting to settle a claim. *Texas Farmers Ins. Co. v. Soriano,* 881 S.W.2d 312, 314 (Tex.1994); *Stowers,* 15 S.W.2d at 547. *Stowers* is the case establishing this duty. In *Stowers,* the court held that an insurer may be liable for negligently failing to settle within policy limits claims made against its insured. *Stowers,* 15 S.W.2d at 547. Since *Stowers,* the supreme court has held that the duty of an insurer to its insured includes "investigation, preparation for defense of the lawsuit, trial of the case, and reasonable attempts to settle." *American Physicians Insurance Exchange v. Garcia,* 876 S.W.2d 842, 849 (Tex.1994); *American Centennial Insurance Co. v. Canal Insurance Co.,* 843 S.W.2d 480, 482 (Tex.1992).

National Union raises two principle objections to the negligence claim: 1) that it owed no duty to defend Rocor; and 2) that no duty is owed to insureds by excess carriers who have no duty to defend. We reject each of these arguments.

Whether duty exists is a question of law. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). In *Stowers,* the Supreme Court of Texas held that an insurer has a "duty to exercise that degree of care that a person of ordinary care and prudence would exercise under the same or similar circumstances, and a failure to exercise such care and prudence would be negligence." *Stowers,* 15 S.W.2d at 547. The Court based this broad principle on the insurer's nearly exclusive control of the suit against its insured:

> [T]he indemnity company had the right to take complete and exclusive control of the suit against the assured, and the assured was absolutely prohibited from making any settlement, except at his own expense, or to interfere in any negotiations for settlement or legal proceeding without the consent of the company.... Certainly, where an insurance company makes such a contract; it, by the very terms of the contract, assumed the responsibility to act as the exclusive and absolute agent of the assured ... and, as such agent, it ought to be held *to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business.*

*Id.* (emphasis added).

■ We recognize that National Union had no duty to defend Rocor under the express terms of the agreement between the parties. However, National Union assumed the duty to fairly settle the claims against Rocor when it took over negotiations, including negotiations involving funds that it did not control. National Union may not have it both ways: it may not take exclusive control of the handling of claims against its insured and then claim in court that it cannot be held liable for mishandling those claims because it had no contractual duty to defend. The assumption of the exclusive right to negotiate a settlement gave rise to the "special relationship" upon which the *Stowers* duty rests. *Cf. Keightley v. Republic Ins. Co.,* 946 S.W.2d 124, 129 (Tex.App.—Austin 1997) (finding reinsurer had duty of ordinary care to insured where, absent contractual duty, reinsurer took over insurer's claims handling), *rev'd on joint motion in view of settlement.* National Union has not refuted testimony that it assumed control. In fact, Renneker admitted at trial that National Union recognized it owed Rocor a duty, especially when National Union was negotiating with Rocor's money.

National Union states that there is no *Stowers* relationship between an insured and its excess carrier where the carrier has no duty to defend the insured. Citing *Emscor Mfg., Inc. v. Alliance Ins. Group,* 879 S.W.2d 894, 909 (Tex.App.—Houston [14th Dist] 1994, writ denied), National Union argues that no excess carrier, let alone an excess carrier with no duty to defend, has a special relationship giving rise to a duty to its insured. *Emscor* does not support this position. In *Emscor,* the insured never met the contractual requirements needed to trigger coverage from its

excess carrier. What the appellate court reaffirmed, then, was that the limits of the primary insurance policy must be exhausted before the primary carrier *"has a right to"* require the excess carrier to contribute to a settlement. *Id.* at 903 (citing *Union Indem. Ins. Co. of New York v. Certain Underwriters at Lloyd's,* 614 F.Supp. 1015, 1017 (S.D.Tex.1985) (emphasis added)). While the *Emscor* court did note that it had never been asked to apply a *Stowers* duty to an excess carrier before, it went on to address the issue. Furthermore, we do not hold here that all excess carriers with no duty to defend have settlement duties. Our negligence holding is based on National Union's assumption of negotiations.

As a result of the decision in *Stowers,* a rule of law in Texas, appropriately called the *Stowers* Doctrine, has developed. This rule holds that when an offer to settle within policy limits is made to an insurer, the insurer has a duty to settle if an ordinary person would do so. *See Ranger County Mut. Ins. Co. v. Guin,* 723 S.W.2d 656, 659 (Tex.1987) (defining duties under *Stowers* Doctrine). If the insurer breaches this duty, the insured may sue for any excess liability it incurs as the result of trial.

Rocor's claim does not fall neatly into the *Stowers* paradigm. National Union did settle, and there is no excess liability charged against Rocor. However, under the broad negligence principle outlined in *Stowers* and elsewhere, National Union owed Rocor a duty to handle claims against it in such a way as to minimize Rocor's liability and damage to its finances. The supreme court has recognized that negligence in settling claims does not necessarily have to fall within *Stowers* to be actionable. In *Garcia,* the court stated, "[T]he court has expanded an insurer's duty to include acting as an ordinarily prudent person in business judgment—*whether under the* Stowers *doctrine or not*—to include making unreasonable attempts to settle." *Garcia,* 876 S.W.2d at 863. The supreme court has also recognized that damages might be available for delays in settlement. *See Arnold,* 725 S.W.2d at 167 (stating that, without such a cause of action, insurers can arbitrarily deny coverage and *delay payment* of a claim with no more penalty than interest on the amount owed).

A recent Texas court of appeals decision has declined to extend the *Stowers* duty beyond the duty to protect insureds from liability in excess of coverage. *Dear v. Scottsdale Ins. Co.,* 947 S.W.2d 908, 915 (Tex.App.—Dallas 1997, writ denied). To the extent that *Dear* suggests that an insured may not recover damages for an insurer's negligent settlement practices, we disagree with this holding. However, we do not believe the decision in *Dear* necessarily conflicts with our decision here. In *Dear,* the insured sued his insurer for settling claims brought against him rather than defending them in court. The court held that, under the contract between the parties, the insurer had an absolute right to settle the case without consulting with the insured. The court explained that the policy reasons behind *Stowers* did not militate expanding the doctrine under these circumstances:

> Courts fashioned the *Stowers* duty to avoid the effects of a conflict of interest between the insurer and its insured. This conflict arises because the insurer has sole control of settlement, but limited liability. When the insured faces exposure near or above the policy's liability limits, its exposure remains limited by the policy terms.

*Id.* at 915. We find that these same concerns are at play here, where National Union's exposure was limited to the policy limits and, because it had no duty to defend, it could drag out settlement for as long as it pleased while Rocor continued to pay what were essentially unnecessary fees in the preparation for a trial that everyone knew would never take place.

Rocor has offered evidence that National Union breached its duty by mishandling settlement negotiations. We do not hold that there is an "ideal" time peri-

od in which settlements must be reached. We realize that whether because of recalcitrance of plaintiffs or complexity of issues, some cases take longer than others to settle. Under some circumstances, a year may be a reasonable settlement period. But here, Rocor's evidence shows that settlement was possible in June 1990, at around $6.3 million. The original defendants agreed among themselves that this was a reasonable figure. Yet, a settlement was not reached for almost a year. Rocor's evidence further shows that National Union, through its attorney, was responsible for this delay and that this delay caused Rocor to incur damages.

Thus, Rocor has sustained a negligence action, and we affirm this point of error.

## MISREPRESENTATIONS

In its second point of error, Rocor challenges the judgment n.o.v. because evidence at trial supported a jury finding that National Union had made misrepresentations to Rocor during the settlement process. These misrepresentations include: Renneker's statement in May 1990 that he believed the case would settle by the end of the month, which he did not then follow up with an offer to the plaintiffs; Renneker's failure to disclose the offer he received in April or May 1990 to settle the children's claims; and Renneker's statement in December 1990 that the case had been settled for $3.8 million. We overrule this point of error.

Article 21.21 of the Insurance Code prohibits misrepresentations by insurers about the benefits or advantages of the policy and prohibits making any statement with respect to the business of insurance that is untrue, deceptive, or misleading. TEX. CIV. STAT. ANN. art. 21.21, § 4. In addition, the Texas Administrative Code contains a provision against misrepresentation. *See* 28 TEX. ADMIN. CODE § 21.3 (prohibiting misrepresentations); *id.* at § 21.4 (defining misrepresentation).

We do not believe these provisions provide grounds for relief here. Article 21.21 clearly applies to advertising and unfair competition between insurers and so is inapplicable. *See* TEX. CIV. STAT. ANN. art. 21.21, § 4(1)(2) (defining as unfair practices misrepresentations and false advertising and listing array of practices applying directly to insurance advertising). Section 21.4 of the Administrative Code has broader application, prohibiting untrue statements of material fact, omission of material facts, misleading information on material facts, material misstatements of the law; and failure to disclose any matter required by law to be disclosed. TEX. ADMIN. CODE § 21.4. Even if we were to find that this provision is applicable to National Union's statements, we could not grant relief under this theory, because Rocor has not demonstrated any damages based on these statements. To recover for misrepresentation, a plaintiff must show that the misrepresentation was a producing cause of its injury. *See State Farm Fire & Cas. Co. v. Miller,* 713 S.W.2d 700 (Tex.App.— Dallas 1986, writ ref'd n.r.e.). Rocor's attorney expressly stated at trial that any misrepresentations about settlement did not affect his continued trial preparation. In addition, as National Union points out, Rocor testified that it had no control over the settlement negotiations. Any misstatement made to Rocor could not have affected the settlement process. Full disclosure of the offer to settle the children's claims would not have affected the adults' claims, and thus Rocor would have had to continue incurring expenses preparing for trial. We overrule this point of error.

## NATIONAL UNION'S CROSS POINTS

National Union brings three cross points: 1) that the trial court erred in submitting a general negligence question to the jury; 2) that the trial court erred by including in its judgment an advisory opinion on damages; and 3) that there was no evidence or insufficient evidence to support the jury's answer to a question on attorney's fees.

National Union charges in its first cross point that, because Rocor's negligence seems to be based on *Stowers,* a *Stowers* charge was required. Citing *Garcia,* 876

S.W.2d at 848, National Union claims that this charge would require the jury to determine whether National Union behaved as an ordinarily prudent *insurer* rather than, as the jury here was charged, as an ordinarily prudent *person*. *Garcia*, however, did not address the question of whether *insurer* is more appropriate than *person*. In fact, the court in *Garcia* quoted *Stowers*, which uses *person*, and, in the same paragraph, used the phrase "ordinarily prudent *insurer*," with no comment on which was more appropriate. *Garcia*, 876 S.W.2d at 848. Since *Stowers* remains good law, we find no error and overrule this point.

In its second point on cross-appeal, National Union complains that the trial judge erroneously gave an "advisory opinion" in his judgment n.o.v. by calculating the award amount Rocor would have received if the jury verdict had been allowed to stand.

In its third point, National Union claims that the jury's assessment that National Union should pay attorney's fees at a rate of 40 percent of the award was not supported by legally or, alternatively, factually sufficient evidence. Rocor claims that National Union waived these complaints by accepting, without objection, the judgment n.o.v. and by not objecting to the jury's findings.

We agree with Rocor. Although the rules of civil procedure allow an appellee who has secured a judgment n.o.v. at trial to raise objections by cross points on appeal, this rule does not eliminate the basic requirement that a trial court be given the opportunity to cure any error before appeal is sought. TEX.R. CIV. P. 324(c); *see also* TEX.R.APP. P. 33(a) (requiring timely objection or motion to preserve most error); *Western Const. Co. v. Valero Transmission Co.*, 655 S.W.2d 251, 256 (Tex. App.—Corpus Christi 1983, no writ). We are aware that a case supporting National Union's third cross point was issued *after* the judgment in this case, thus making preservation impossible. *See Arthur An-*

*dersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex.1997). However, the finality of judicial decisions would be seriously undermined if litigants were allowed to raise unpreserved error on appeal on the basis of new case law. Therefore, we will not consider National Union's cross points.

## CONCLUSION

We hold that Rocor, a first-party insured, had a legal cause of action against its excess carrier, National Union, under either of two theories. First, Rocor had standing to sue for failure to settle in good faith under the Texas Insurance Code § 21.21, as explained by the Supreme Court in *Vail*. Second, Rocor had a common law negligence cause of action against National Union, based on the duty National Union assumed when it took over settlement negotiations in the third-party claim against Rocor. We do not agree with National Union that both causes of action are closed to Rocor; otherwise, insureds in Rocor's financial condition, attempting to effect fair and efficient settlements, could never recover damages when their insurers act contrary to those goals.

We also hold that Rocor presented sufficient evidence on these claims to defeat a motion for judgment n.o.v. However, we overrule Rocor's point of error based on National Union's misrepresentations. We also overrule National Union's cross points.

Concurring Opinion by: Justice SARAH B. DUNCAN, joined by Justice RICKHOFF.

Dissenting Opinion by: Justice PAUL W. GREEN, joined by Justice ANGELINI.

SARAH B. DUNCAN, Justice, concurring.

I agree the jury's negligence findings must be reinstated and judgment should be rendered in Rocor's favor on this theory of liability.[1] But I do not believe Rocor

---

1. *Cf., e.g., American Physicians Ins. Exch. v.* *Garcia*, 876 S.W.2d 842, 846 (Tex.1994) (ex-

has a cause of action for breach of a duty of good faith and fair dealing.[2]  Nor do I believe either that National Union waived its cross-points[3] or that Rocor is entitled to an award of attorney's fees.[4]

GREEN, Justice, dissenting.

My dissent to the February 11, 1998 panel decision is withdrawn and the following is substituted.

The question presented is whether an insured under an excess liability insurance policy has a negligence and bad faith cause of action against its insurer to recover damages caused by the insurer's failure to promptly settle with a third-party claimant after liability has become reasonably clear. Four members of the court, including this author, hold that no bad faith claim exists under these facts.  However, five members of the court hold that an insurer may be negligent when an insured is caused to incur defense costs as a result of the insur-

er's failure to promptly settle, even though the policy specifically excludes coverage for such expenses.  It is to the latter holding that I respectfully dissent.

The insurance policy between Rocor and National Union was an excess indemnity policy that promised to pay up to its limit any judgment in excess of the primary insurance coverage.  National Union fully performed its obligations under the policy, which specifically excluded any duty to defend.  That notwithstanding, five members of the court would permit Rocor to recover its defense costs from National Union.  This holding is apparently based on an insurer's duty to "fairly settle" claims against its insured when it takes control of the settlement negotiations. However, even recognizing that an insurer may owe extra-contractual duties to its insured arising out of the agency relationship that develops in its conduct in defending and settling claims on behalf of the

plaining that *Stowers* duty arises out of contractual obligations to defend and indemnify insured and its control over insured's defense); *id.* at 847 n. 11 (declining to address "the difference between the requirement of 'good faith' in 'attempting' settlement under Tex. Ins.Code Ann. art. 21.21–2, § 2(b)(4), and the common law standard of ordinary care concerning a third-party liablity insurer's attempts to settle a covered lawsuit"); *id.* at 849 (explaining that *Stowers* liability may extend beyond liability for excess judgment after negligent failure to settle within policy limits); *American Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480 (Tex.1992) (*Stowers* duty owed by primary carrier in charge of settlement negotiations to excess carrier); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983) ("One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care."); *Ecotech Int'l., Inc. v. Griggs & Harrison*, 928 S.W.2d 644, 648 (Tex.App.—San Antonio 1996, writ denied) ("We agree with the defendants that the *Stowers* doctrine covers a broad scope which includes investigation, preparation of defense, the trial, and certain matters within the agency relationship between the insurer and insured, such as negligence, gross negligence, failure to advise, acting without authority, breach of contract, and others."); *Emscor Mfg., Inc. v. Alliance Ins. Group*, 879 S.W.2d 894, 909 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (*Stow-*

ers duty "extends to the full range of the agency relationship as expressed in the policy," but does not apply when insurer has "no duty to investigate, negotiate or defend [insured] under the terms of the excess policy or at law, and never undertook those responsibilities on its own.").

**2.** *Maryland Ins. Co. v. Head Indus. Coating & Servs., Inc.*, 938 S.W.2d 27, 28 (Tex.1996) ("[W]e now hold that Texas law recognizes only one *tort* duty in [the third-party insurance claim] context, that being the duty stated in *Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved).") (citing *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 318 (Tex. 1994) (Cornyn, J., joined by Hecht, J., concurring)) (emphasis added).

**3.** *See* Tex.R.App. P. 38.2(b)(1)(A); *Oak Park Townhouses v. Brazosport Bank*, 851 S.W.2d 189, 190–91 (Tex.1993); *Commonwealth Lloyds Ins. Co. v. Downs*, 853 S.W.2d 104, 109 (Tex.App.—Fort Worth 1993, writ denied).

**4.** *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex.1997); *Blair v. Fletcher*, 849 S.W.2d 344, 345 (Tex. 1993) ("[w]hen the applicable law changes during the pendency of the appeal, the court of appeals must render its decision in light of the change in the law.")

insured, *see Ranger County Mut. Ins. Co. v. Guin,* 723 S.W.2d 656, 659–60 (Tex. 1987), those duties do not exist where there is no duty to defend. National Union did not owe Rocor a defense under its policy, and neither did National Union assume any extra-contractual duties to Rocor when it conducted settlement negotiations with the third-party claimant. Once Rocor tendered its deductible, together with the policy limits of the primary liability policy, National Union was entitled by its policy to conduct settlement negotiations independent of Rocor. Rocor is thus not entitled to a recovery based on negligence.

The trial court's judgment was correct and it should have been affirmed.