**ROCOR INTERNATIONAL, INC. f/k/a Donco Carriers, Inc., Petitioner,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Respondent.**

No. 99-0673.

Supreme Court of Texas.

Argued March 1, 2000.

Decided May 23, 2002.

Rehearing Overruled July 3, 2002.

Jay Harvey, Winckler & Harvey, Mark L. Kincaid, Kincaid & Horton, Austin, for Petitioner.

Gerald D. McFarlen, San Antonio, Thomas F. Nye, Corpus Christi, Brin & Brin, Thomas C. Wright, The Wright Law Firm, Lydia S. Zinkhan, Campbell Harrison & Wright, Houston, William V. Dorsaneo, III, Dallas, for Respondent.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice JEFFERSON, and Justice RODRIGUEZ joined.

In this case, an insured sued its excess liability carrier for costs that it incurred in defending a lawsuit while the insurer delayed settling the claim. We must decide whether article 21.21 of the Texas Insurance Code affords the insured a cause of action for unfair claim settlement practices[1] and, if it does, we must define the action's legal elements. A divided court of appeals concluded that the insured could not assert a claim under the statute, and that the evidence did not support recovery on the insured's alternative misrepresentation theory. 995 S.W.2d 804, 806. But the court held that the insured could recover under a common-law negligence theory, and rendered judgment on the jury's negligence finding. *Id.*

We hold that the insured may assert a claim under article 21.21. To establish liability thereunder for the insurer's failure to reasonably attempt settlement of a claim against the insured, the insured must show that (1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it. Applying this standard, we hold that the evidence in this case is legally insufficient to support liability under article 21.21 because there is no evidence that the claimant presented the insurer with a proper settlement demand within policy limits that an ordinarily prudent insurer would have accepted. And assuming that the insured has an alternative cause of action for common-law negligence under the facts presented, which we do not decide, this failure of proof is similarly fatal. Finally, we agree with the court of appeals that the evidence is legally insufficient to support recovery under a misrepresentation theory because there is no evidence that the insurer's alleged misrepresentations caused the insured's damages. Accordingly, we reverse the court of appeals'

---

1. *See* Act of March 19, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex. Gen. Laws 395 (amended). The Legislature amended article 21.21, effective September 1, 1995, to expressly allow an insured to bring such an action. Act of May 17, 1995, 74th Leg., R.S., ch 414, § 11, 1995 Tex. Gen. Laws 2988, 2999 (currently codified at TEX. INS.CODE art. 21.21, § 4(10)). This suit was filed before that amendment took effect. Therefore, we refer to article 21.21 as it existed when this suit was filed.

judgment and render judgment for the insurer.

## I. Background

Ralph Mueller was a driver for Rocor International, Inc., a trucking company. One evening in May 1989, after consuming a considerable amount of alcohol at a bar, Mueller swerved his truck off the road and struck two highway patrol officers who had stopped another drunk driver by the side of the road. Both officers were killed. Mueller, whose blood alcohol concentration tested 0.16, was arrested and charged with two counts of involuntary manslaughter. Several months later, the officers' families sued Rocor.

Rocor carried a $1 million primary liability policy issued by Guaranty National Insurance Company, with a $1 million self-insured retention endorsement. Rocor was also insured under an $8 million umbrella policy issued by National Union Fire Insurance Co. of Pittsburgh. Both policies placed the duty to defend on Rocor. The National Union policy also obligated Rocor to cooperate with National Union in settling claims.

Soon after suit was filed, Rocor's attorney, Terrence Martin, began investigating the accident. Martin quickly determined that Rocor would probably be found liable. Mueller claimed that he was not driving the truck when the accident occurred. He claimed that some unknown person had entered the truck and driven away while he was sleeping in the back. The alleged unknown person was never located, however, and Mueller had been apprehended fleeing the accident scene on foot; thus, Martin did not believe Mueller's story was credible.

Martin concluded that Rocor faced significant liability, especially if the case went to trial. Rocor's vice president for safety and risk management, Angel Arzaga,

agreed, and directed Martin to begin settlement negotiations. As early as June 1989, the plaintiffs' attorney, Charles Soechting, informed Martin that he considered this a "policy limits" case ($10 million), but indicated that he might be receptive to some form of structured settlement. In January 1990, the case was set for mediation.

Meanwhile, National Union was advised that liability would likely reach the excess coverage layer. National Union decided to take charge of the settlement efforts, as its policy allowed, and canceled the scheduled mediation. It also directed that no offer was to be made to the plaintiffs at that time. From that point on, National Union's attorney, Stanley Renneker, assumed control of the settlement negotiations.

Over the next fourteen months, the parties exchanged a number of settlement propositions for widely varying amounts. In April 1990, Renneker met with Soechting to discuss settlement. After that meeting, Martin wrote to Arzaga and Guaranty National:

> Concerning settlement, I am pleased to announce that there has finally been some progress in this area. Stanley Renneker, attorney for National Union Fire Insurance Company, met with Mr. Soechting on Wednesday, April 11, 1990. Mr. Soechting requested a structured settlement worth 4.5 million dollars which in my opinion is fairly reasonable and amounts to an 8 million dollar reduction in his initial demand. Mr. Renneker responded to this demand on the following Friday offering a structured settlement worth $2,848,267.00 and is awaiting Mr. Soechting's response.... [G]iven the "relative" closeness of the parties (2.8 v. 4.5), and Mr. Soechting's strong desire to settle this case, Mr. Renneker believes this case, if it is going

to settle, will settle by the end of the month.

Soechting's $4.5 million offer was orally communicated, and he later testified that it was intended to settle only the adults' claims, not the children's. Soechting testified that he was then willing to settle the children's claims for $1.8 million and all of the claims for $6.3 million, and that he believed he communicated this to Renneker. However, Martin testified that he understood from Renneker that Soechting's $4.5 million offer was for the entire case, and he was not aware of any offer to settle the children's claims separately until several months later in September.

Soechting's only written settlement offer was made in a May 4, 1990 letter to Martin and Renneker, which stated: "[W]e will settle this case now for the sum of $10,000,000.00. The plaintiffs will consider a structured settlement having a present value of $10,000,000.00." Martin and Soechting testified that they did not consider $10 million to be a serious offer but merely an attempt by Soechting to "*Stower*-ize" Renneker and pressure him to respond with an offer within total policy limits. *See G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved). A few days later, Arzaga sent a letter to National Union that referred to a $7.5 million settlement demand by Soechting. He also referred to a June 4th letter from Martin to Arzaga that mentioned a $3.8 million settlement offer by National Union. Over the summer, though, the distance between the parties' respective settlement offers appears to have widened. On August 20th, Martin wrote to Arzaga, with copies to Guaranty National, National Un-

ion, and Renneker, reporting that the plaintiffs' settlement demand was $9 million and that Renneker had offered $3.2 million.

In December 1990, the children's claims settled for $1.8 million. The remaining claims went to mediation at least twice, and Soechting's demand for those claims was $5 million. Renneker offered $3.8 million. The adults' claims finally settled in March 1991 for $4.6 million.

Rocor filed this suit against National Union to recover attorney's fees and costs that it incurred as a result of National Union's alleged failure to promptly effectuate settlement. Rocor claimed that National Union was negligent, and that it violated article 21.21 of the Insurance Code.[2] The jury found that National Union's negligence proximately caused Rocor damages, and that National Union knowingly engaged in unfair or deceptive acts or practices in the business of insurance. National Union moved for judgment n.o.v., arguing that Rocor could not maintain common-law negligence or article 21.21 causes of action. Alternatively, National Union claimed there was no evidence to support the jury's findings. The trial court granted judgment n.o.v., and Rocor appealed.

The court of appeals, sitting *en banc,* reversed the trial court's judgment. Three justices believed that Rocor could assert causes of action for both common-law negligence and for unfair claim settlement practices under article 21.21. 995 S.W.2d at 811. Two justices concluded that Rocor could recover for common-law negligence, but not for article 21.21 violations. *Id.* at 816. And two dissenting justices believed that Rocor could not re-

---

**2.** Rocor also claimed that National Union violated the Texas Deceptive Trade Practices–Consumer Protection Act, but the trial court determined that Rocor could not seek DTPA

relief because it was not a "consumer" under the Act. Rocor does not challenge that decision here.

cover under either theory. *Id.* at 816–17. Accordingly, the court of appeals rendered judgment for Rocor on its common-law negligence claim. *Id.* at 806.

Both Rocor and National Union filed petitions for review. Rocor, having elected to recover under article 21.21, contends that the court of appeals' conclusion that it has no statutory cause of action is contrary to article 21.21's terms and purposes, and to our decision in *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129 (Tex.1988). On the other hand, National Union argues that the court of appeals' judgment based on common-law negligence conflicts with our decisions in *Maryland Insurance Co. v. Head Industrial Coatings & Services, Inc.*, 938 S.W.2d 27 (Tex.1996) and *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842 (Tex.1994). We granted both petitions to consider the remedies available to an insured in the circumstances presented.

## II. Article 21.21

### A. The Statute's Application

Rocor has elected to recover under article 21.21 should we determine that it has an action thereunder. Accordingly, we must first decide whether the statute, as it existed when this suit was filed, permits an insured to recover defense costs it incurred because its insurer unreasonably delayed settling a third-party liability claim.[3] Section 16(a) of article 21.21 provides:

---

**3.** The Legislature has since amended article 21.21 to specifically make certain unfair claim settlement practices actionable by insureds. Section 4 now defines unfair or deceptive practices to include
 (10) Unfair Settlement Practices.
 (a) Engaging in any of the following unfair settlement practices with respect to a claim by an insured or beneficiary:

*Any person who has sustained actual damages as a result of another's engaging in an act or practice declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance ... may maintain an action against the person or persons engaging in such acts or practices.*

TEX. INS.CODE art. 21.21, § 16(a) (emphasis added). In interpreting article 21.21, we have recognized the Legislature's " 'intent to comprehensively regulate and prohibit deceptive insurance practices.' " *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 385 (Tex.2000) (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485–87, 486 (Tex.1998)).

Section 16(a) allows insureds to pursue claims for conduct declared unfair in rules or regulations adopted by the State Board of Insurance under article 21.21. State Board of Insurance Order No. 18663, which was adopted under the statute, prohibits unfair or deceptive practices "as defined by the provisions of the Insurance Code." State Bd. of Ins., Bd. Order No. 18663 (codified at 28 TEX. ADMIN. CODE § 21.3). Insurance Code article 21.21–2, section 2(b)(4), in turn, defines as an unfair practice "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear." TEX. INS.CODE art. 21.21–2, § 2(b)(4). Although article 21.21–2 does not itself create a pri-

---

\* \* \*
(ii) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.

vate cause of action, we held in *Vail* that conduct violating article 21.21–2 was actionable under article 21.21 by reference through Board Order 18663. *Vail,* 754 S.W.2d at 133–134.[4] Accordingly, *Vail* recognized that an insured may sue its insurer under article 21.21, section 16 for not attempting in good faith to settle a claim promptly, fairly, and equitably after liability has become reasonably clear.

In *Watson,* we refused to extend *Vail* to allow a third-party claimant to sue the defendant's insurer for not settling a liability claim against its insured. *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 147–50 (Tex.1994). We emphasized that the Legislature had specifically refused to create such a cause of action under the statute, and distinguished the unfair settlement practice in *Vail* as one that arose in the context of the special relationship between an insured and its insurer. *Id.* at 149. Because a third party to the insurance contract enjoys no such special relationship, we refused to confer upon Watson, a third-party claimant, the rights and remedies of an insured:

> A third party claimant has no contract with the insurer or the insured, has not paid any premiums, has no legal relationship to the insurer or special relationship of trust with the insurer, and in short, has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers under art. 21.21 with regard to their insureds.

*Id.* Our holding in *Watson* was consistent with the remedial purposes underlying article 21.21. We expressed concern about undermining the duties owed by an insurer to its insured by creating an inherently conflicting duty to a third party. *Id.* at

150. To hold otherwise, we stated, "would undermine the duties insurers owe to their insureds," contrary to article 21.21's purpose. *Id.* These considerations led us to conclude that Watson had no standing under article 21.21, section 16 to sue the insurer for unfair claim settlement practices. *Id.* But we emphasized that *"Vail* remains the law as to claims for alleged unfair claim settlement practices brought by insureds against their insurers." *Id.* at 149.

National Union suggests that we resolved the issue presented in this case against the insured in *Garcia.* There, an insurer had refused to settle a medical malpractice suit against its insured on the ground that the plaintiffs' claims were not covered by the policy. *Garcia,* 876 S.W.2d at 845. The plaintiffs settled with the physician, agreeing to enforce the judgment they obtained against him only against his insurer, and taking an assignment of his rights against the insurer. *Id.* The plaintiffs then sued the insurer solely as its insured's assignees, alleging that its failure to settle was negligent and violated article 21.21 and the DTPA. *Id.* at 845–46. Based on jury findings that the insurer's failure to settle was negligent and "an unfair practice in the business of insurance," the trial court rendered judgment against the insurer under article 21.21, and the court of appeals affirmed. *Id.* at 846. We held that (1) the evidence conclusively established that the insurer discharged its duty to defend, and (2) the insurer did not breach its *Stowers* duty to settle because it never received a settlement demand within policy limits. *Id.* at 843. We also emphasized that the record was "devoid of evidence that [the insurer] ever engaged in any unfair or deceptive act or practice as

---

**4.** When *Vail* was decided, article 21.21–2, section 2(b)(4) was codified at article 21.21–2, section 2(d).

defined in the relevant statutes." *Id.* at 847.

National Union points to language in *Garcia* that it claims suggests that an insured has no cause of action against its insurer under article 21.21 for failing to settle a third-party claim against the insured. For example, we wrote that "[b]reach of the *Stowers* duty does not constitute a violation of article 21.21," *id.* at 847, and "*Vail* is inapposite [because it involved a first-party property insurance policy]." *Id.* at 847, n. 10. But neither of these statements indicates that we intended to limit an insured's statutory claims against its own insurer for unfair claim settlement practices to first-party insurance claims, and neither was necessary to our decision. Nor can we identify a principled basis upon which to draw a distinction between first-party and third-party claims when the insured has been directly injured as a result of its insurer's unfair claim settlement practices.

 When construing statutes, our ultimate purpose is to ascertain the Legislature's intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). In determining that intent, we may look to the statute's underlying purpose. TEX. GOV'T CODE § 311.023(1); *see Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). The Legislature has directed that article 21.21 "shall be liberally construed and applied to promote its underlying purposes as set forth in this section." TEX. INS.CODE art. 21.21, § 1(b). The statute was enacted to protect insurance consumers by prohibiting unfair or deceptive practices in the business of insurance. *Id.* § 1(a); *see State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 435 (Tex.1995). We see nothing in the statute's language or in its underlying purposes to support a conclusion that the Legislature intended to

limit the statute's application to first-party claims when the insured has sustained actual damages as a result of unfair practices. Accordingly, we conclude that Rocor may assert an article 21.21 claim against its excess liability carrier for damages that it sustained as a result of National Union's unfair claim settlement practices.

## B. The Statutory Liability Standard

National Union claims that there is no evidence to support the jury's finding that it is liable under the statute for engaging in unfair claim settlement practices. But before we can conduct a meaningful evidentiary review, we must first define the statutory liability standard against which to measure the evidence. An insurer faces article 21.21 liability if it does not "attempt[ ] in good faith to effectuate prompt, fair, and equitable settlements of claims submitted ... in which liability has become reasonably clear." We have never determined when liability has become "reasonably clear" within the statute's meaning so that an insurer may be held liable for failing to reasonably and promptly settle a third party's claim against its insured.

### 1. Reasonably Clear Liability

Neither the Insurance Code, nor the rules or regulations the Board has adopted thereunder, articulate when liability has become reasonably clear for purposes of triggering the insurer's duty to reasonably attempt settlement under the statute. National Union claims that, by failing to define a standard, the Legislature must have intended the common-law *Stowers* standard to apply. There is nothing to indicate that the Legislature had in mind any standard other than the familiar *Stowers* standard, and certainly there was merit to unifying the common-law and statutory

standards in this context. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 55 (Tex.1997). Applying the familiar common-law standard promotes uniformity and prevents insurers from facing conflicting liability standards for failing to settle lawsuits filed by injured third-party claimants. *See id. Stowers* has long defined an insurer's duty to its insured in attempting to settle third-party liability claims. *Stowers,* 15 S.W.2d at 547–48. While this case does not fit neatly within the *Stowers* paradigm because the insurer ultimately settled within policy limits, we believe that *Stowers* provides an appropriate framework for understanding and applying the statutory standard.

▆▆▆ Under the common law, an insurer generally has no obligation to settle a third-party claim against its insured unless the claim is covered under the policy. *See Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). Nor is an insurer obligated to indemnify its insured for a third-party claim on which the insured is not liable. *Cf. Linkenhoger v. American Fidelity & Cas. Co.,* 152 Tex. 534, 260 S.W.2d 884, 887 (1953) (holding that insured's *Stowers* claim against insurer did not accrue until insured's liability was finally adjudicated), *overruled in part on other grounds by Street v. Second Court of Appeals,* 756 S.W.2d 299 (Tex. 1988), *Hernandez v. Great Am. Ins. Co. of N.Y.,* 464 S.W.2d 91 (Tex.1971). These well-established common-law precepts, which reflect the parties' expectations in contracting for insurance, inform our determination of the scope of the duty the Legislature imposed. Accordingly, we hold that to trigger an insurer's statutory duty to reasonably attempt settlement of a third-party claim against its insured, the policy must cover the claim and the insured's liability to the third party must be reasonably clear. In this case, National

Union does not dispute coverage under the policy, nor does it claim that Rocor's liability was not reasonably clear. Thus, these two elements of Rocor's statutory claim are satisfied. But National Union maintains that these elements alone are not enough to trigger an insurer's obligation to reasonably attempt settlement. It claims that the insured must also show that the plaintiffs made a proper settlement demand within policy limits that an ordinarily prudent insurer would have accepted.

In some jurisdictions, an insurer that has had a reasonable opportunity to determine that its insured is liable on a covered claim may incur tort liability for failing to settle even if the third-party claimant has not made a firm settlement offer. *See, e.g., City of Hobbs v. Hartford Fire Ins. Co.,* 162 F.3d 576, 586 (10th Cir.1998) (applying New Mexico law); *First State Ins. Co. v. Utica Mut. Ins. Co.,* 870 F.Supp. 1168, 1176 (D.Mass.1994) (applying Massachusetts law); *Maine Bonding & Cas. Co. v. Centennial Ins. Co.,* 298 Or. 514, 693 P.2d 1296, 1303 (1985); *Alt v. American Family Mut. Ins. Co.,* 71 Wis.2d 340, 237 N.W.2d 706, 711–12 (1976); *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 N.J. 474, 323 A.2d 495, 505–07 (1974); *State Auto. Ins. Co. of Columbus, Ohio v. Rowland,* 221 Tenn. 421, 427 S.W.2d 30, 35 (1968). These jurisdictions generally reason that the lack of a firm settlement offer is merely evidence that a jury may consider in deciding the insurer's liability, and does not preclude a tort claim against the insurer. *Rova Farms,* 323 A.2d at 505; *see also Rowland,* 427 S.W.2d at 35.

▆▆▆ But in Texas, the common law imposes no duty on an insurer to accept a settlement demand in excess of policy limits or to make or solicit settlement proposals. *See Garcia,* 876 S.W.2d at 849, 851. As we noted in *Garcia,* "[r]equiring the claimant to make settlement demands

tends to encourage earlier settlements." *Id.* at 851 n. 18. A converse rule, we concluded, would discourage early dispute resolution by effectively "requir[ing] the insurer to bid against itself." *Id.* at 851. Consequently, an insurer's settlement duty is not activated until a settlement demand within policy limits is made, and the terms of the demand are such that an ordinarily prudent insurer would accept it. *See id.* at 849.

■ We see no reason why an insurer's duty to its insured under article 21.21 should not be similarly circumscribed. Accordingly, we hold that an insurer's statutory duty to reasonably attempt settlement of a third-party claim against its insured is not triggered until the claimant has presented the insurer with a proper settlement demand within policy limits that an ordinarily prudent insurer would have accepted. *See id.* A proper settlement demand generally must propose to release the insured fully in exchange for a stated sum, although it may substitute the "policy limits" for that amount. *See id.* at 848–49. At a minimum, the settlement demand must clearly state a sum certain and propose to fully release the insured. *See id.* at 849.

The dissent seems to take the position that liability is reasonably clear under the statute if the insured clearly caused the third party's injuries. But under that view of the statute, an insurer could be held liable for failing to settle even if the amount of the injured third party's damages were unknown or unclear. And our view of the statute is consistent with the statutory purpose the dissent identifies, because it is expressly intended to encourage swifter dispute resolution. *See Garcia,* 876 S.W.2d at 851 & n. 18.

■ In sum, we hold that an insurer's liability is not reasonably clear, and liability may not be imposed under article 21.21,

unless the insured shows that (1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it. These elements comprise the statutory liability standard against which to measure legal sufficiency.

### 2. No Evidence Review

■ National Union claims that there is no evidence to support the jury's finding that it engaged in unfair claim settlement practices under article 21.21. In deciding whether legally sufficient evidence supports a jury finding, we view the evidence in a light that tends to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). If more than a scintilla of evidence supports the jury's finding, we must sustain their verdict. *Id.* More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.*

National Union does not dispute coverage under the policy, nor does it claim that Rocor's liability was not reasonably clear. Thus, we must determine whether there is any evidence that the claimant made a proper settlement demand within policy limits that was reasonable under the circumstances such that an ordinarily prudent insurer would have accepted it. As we have said, a proper settlement demand must clearly state a sum certain and propose to fully release the insured. *See Garcia,* 876 S.W.2d at 848–49. The record in this case reflects no such demand. The plaintiffs' only written settlement demand was for $10 million, which was conveyed in a May 4, 1990 letter to Martin and Renneker. Rocor does not base its unfair

settlement practices claim on National Union's failure to accept this demand, nor could it, given the disparity between that amount and the $6.4 million for which the case ultimately settled.

 Rocor relies primarily upon Soechting's oral offer made to Renneker at the April 11, 1990 meeting. However, the record reveals great confusion about that offer's terms. At the meeting, Soechting requested a structured settlement worth $4.5 million. At trial, Soechting testified that he intended that figure to settle only the adults' claims, and that he was willing to settle the children's claims for $1.8 million, for a total combined settlement of $6.3 million. Because the case ultimately settled for close to that amount nearly one year later, Rocor claims that National Union unreasonably delayed settlement and is liable for unfair claim settlement practices. But correspondence from Martin to Rocor contemporaneous with the April negotiations suggests that Renneker understood the $4.5 million offer was to settle all claims, including the children's. Although Soechting testified that he "believed" he communicated to Renneker that the offer's scope was limited, the record indicates that Renneker did not understand the terms of Soechting's proposal.

In *Garcia*, we stated that the *Stowers* remedy of shifting the risk of an excess judgment onto the insurer is not appropriate unless there is proof that the insurer was presented with a reasonable opportunity to settle within policy limits. *Garcia*, 876 S.W.2d at 849. We implied that a formal settlement demand is not absolutely necessary to hold the insurer liable, *see id.*, although that would certainly be the better course. But at a minimum we believe that the settlement's terms must be clear and undisputed. That is because "settlement negotiations are adversarial and . . . often involve[ ] hard bargaining by both sides." *Id.* Moreover, the settlement process can

be fluid and complex, as the negotiations in this case indicate. Given the tactical considerations inherent in settlement negotiations, an insurer should not be held liable for failing to accept an offer when the offer's terms and scope are unclear or are the subject of dispute. Soechting's oral proposal at the April 11th meeting did not clearly state the proposed settlement's terms, nor did it mention a release. Accordingly, there is no evidence that National Union was presented with a proper settlement demand, which is a prerequisite to article 21.21 liability.

### 3. Liability Absent a Duty to Defend

 National Union contends that, irrespective of Rocor's liability theory or the sufficiency of the evidence to support it, National Union cannot be liable for Rocor's defense costs because it had no duty to defend Rocor, and the *Stowers* duty is premised upon the insurer's control of the insured's defense. We disagree.

In *Stowers*, we held that an insurer that failed to use ordinary care could be liable for a judgment against its insured in excess of policy limit. *Stowers*, 15 S.W.2d at 546–47. While the insurer in that case, unlike National Union, had the duty to defend its insured, our decision was also based upon the insurer's control over settlement:

> [T]he indemnity company had the right to take complete and exclusive control of the suit against the assured, and *the assured was absolutely prohibited from making any settlement,* except at his own expense, or to interfere in any negotiations for settlement or legal proceeding without the consent of the company; *the company reserved the right to settle any such claim or suit brought against the assured.*

*Id.* at 547 (emphasis added).

In this case, while National Union did not have a contractual duty to defend Ro-

cor, it did have a duty to indemnify Rocor for covered losses. As in *Stowers*, the policy prohibited the insured from settling a suit, except at its own expense, without the insurer's consent. And it is undisputed that National Union assumed exclusive control over settlement negotiations after January 1990. Rocor seeks to recover its defense costs not as a measure of contractual damages, but as tort damages for National Union's alleged delay in settling the case once it assumed control of the settlement negotiations. In light of that control, the same considerations that led to our decision in *Stowers* are present in this case. National Union is not exempt from liability for unfair claim settlement practices merely because it had no contractual duty to defend Rocor.

## III. Alternative Recovery Theories

### A. Misrepresentation

■ Rocor claims that it is entitled to recover under the jury's alternative finding that National Union made misrepresentations to Rocor during the settlement process. Specifically, Rocor claims that National Union, through Renneker: (1) represented in May 1990 that the case would settle by the end of the month, but then made no effort to settle; (2) did not disclose that, as early as April or May of 1990, Soechting had offered to settle the minors' claims for $400,000 each; and (3) falsely represented in December 1990 that the case had been settled for $3.8 million. Because there was evidence to support the jury's alternative finding, Rocor argues, the trial court erred in granting a judgment n.o.v. on this claim. In response, National Union argues that article 21.21's misrepresentation provisions apply only to advertising and unfair competition between insurers and so do not afford Rocor grounds for relief. Alternatively, National Union claims that there is no evidence to support the jury's misrepresentation finding.

We agree with National Union and the court of appeals that there is no evidence that the alleged misrepresentations affected Rocor's trial preparation costs and thus caused it damage. Accordingly, without considering the misrepresentation claims' legal underpinnings, we affirm the trial court's judgment n.o.v. insofar as it relates to Rocor's misrepresentation claims.

### B. Negligence

■ Finally, National Union claims that the court of appeals erred in rendering judgment against it based on a negligence theory. National Union contends that *Stowers* defines an insurer's common-law duty to settle third-party claims against its insured, and that there can be no *Stowers* liability absent an excess judgment against the insured. On the other hand, Rocor argues that *Stowers* is merely a particularized aspect of ordinary negligence that does not preclude an insured from recovering damages caused by its insurer's negligent delay in effectuating a settlement.

Whether or not Rocor can recover delay damages under a common-law negligence theory based on the facts presented, which we do not decide, it must first establish that National Union was presented with a proper settlement demand within policy limits that an ordinarily prudent insurer would have accepted. As we have said, there is no evidence that National Union was presented with such a demand, and this failure of proof is fatal to Rocor's common-law claim.

### IV. Conclusion

In sum, we hold that an insured may assert a cause of action against its insurer under article 21.21 for failure to attempt settlement of a third-party claim once lia-

bility has become reasonably clear. To establish liability, the insured must show that (1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it. Because there is no evidence that the claimants made a proper settlement demand in this case, we hold that Rocor is not entitled to recover under article 21.21. This failure of proof is similarly fatal to Rocor's common-law negligence claim. Finally, we hold that there is no evidence to support Rocor's recovery on a misrepresentation theory. Accordingly, we affirm the court of appeals' judgment on Rocor's article 21.21 and misrepresentation claims, and reverse and render a take nothing judgment on Rocor's negligence claim.

Justice HECHT delivered a concurring opinion, in which Justice OWEN joined.

Justice BAKER delivered a dissenting opinion, in which Justice HANKINSON joined.

Justice HECHT, joined by Justice OWEN, concurring in the judgment.

I can join in the Court's judgment but not in its opinion. The simple reason why National Union cannot be charged with the expenses Rocor incurred in defending itself against wrongful death claims after they should have been settled is because, as the Court concludes, there is no evidence that settlement should, or could, have occurred before it did. The most that can be said from the record in this case is that when the claimants' lawyer

testified in November 1995, years after the claims were settled, that he "believe[d]" that it was "more likely than not" that he would have accepted a $6.3 million offer in April 1990 if there had been "any communication" between the parties, even though his only written offer at the time was for the total insurance coverage of $10 million. A belief in the probability of a hypothetical based on facts that never occurred is not evidence.

So given this failure of proof, there is no good reason for deciding, theoretically, whether if Rocor had met its burden of proof it *could* recover under the version of article 21.21 of the Texas Insurance Code that was amended seven years ago,[1] nor is there good reason for dismissing the plain words of the Court's opinion in *American Physicians Insurance Exchange v. Garcia*[2] as misstating the Court's intent in 1994 when the case was decided. In *Garcia*, an insurer, APIE, had refused to settle a medical malpractice suit against its insured, Garcia, on the ground that the plaintiffs' claims were not covered by the policy.[3] The plaintiffs reached an agreement with Garcia, obtaining a judgment against him to be enforced only against APIE and taking an assignment of his rights against APIE.[4] The plaintiffs then sued APIE solely as Garcia's assignees, alleging that APIE's failure to settle was negligent and violated article 21.21 and the DTPA.[5] Based on jury findings that APIE's failure to settle was negligent and "an unfair practice in the business of insurance", the trial court rendered judgment against the insurer under the version of article 21.21 that was in effect *in 1985*,

1. Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 11, 1995 Tex. Gen. Laws 2988, 2997–3000.

2. 876 S.W.2d 842 (Tex.1994).

3. *Id.* at 844.

4. *Id.*

5. *Id.*

and the court of appeals affirmed.[6] We held that APIE's failure to settle the plaintiffs' claims against Garcia could not be a violation of article 21.21:

> Although Garcia argues that this case is not solely a *Stowers* lawsuit because remedies under the Deceptive Trade Practices Act and Tex. Ins.Code art. 21.21 are cumulative of other remedies, and the judgment below is couched in terms of a violation of article 21.21, all of the jury issues that form the basis for the judgment against APIE in the *Stowers* case involve the breach of either the duty to defend or the duty to settle the malpractice lawsuit. Breach of the *Stowers* duty does not constitute a violation of article 21.21 or the DTPA. Moreover, APIE is not responsible for any separate DTPA or Insurance Code violation because the record in this case is devoid of evidence that APIE ever engaged in any unfair or deceptive act or practice as defined in the relevant statutes. *See* Tex. Ins.Code Ann. art. 21.21, §§ 4, 16(a) (Vernon Supp.1994). We hold that there was no violation of article 21.21.[7]

We specifically rejected Garcia's argument based on *Vail v. Texas Farm Bureau Mutual Insurance Co.*[8]:

> Garcia contends that *Vail* ... support[s] his contention that jury findings to the effect that a failure to settle involves an unfair or deceptive practice should entitle him to recover under article 21.21. *Vail*, however, involved an insurer's bad faith refusal to pay a claim under a first-party property insurance policy. *Vail*, 754 S.W.2d at 130. A

*Stowers* action, by definition, involves an insurer's duty to settle a covered lawsuit—a situation that can only arise under a third-party liability insurance policy. Thus *Vail* is inapposite.[9]

Plainly, *Garcia* limited *Vail*'s applicability to first-party claims. This limitation is consistent with *Vail*'s alternative holding that article 21.21 makes actionable a breach of the common-law duty of good faith and fair dealing. That duty covers only first-party claims.[10]

The Court now dismisses these passages as no "indicat[ion] that we intended to limit an insured's statutory claims against its own insurer for unfair claim settlement practices to first-party insurance claims," [11] but if they do not both plainly say that an insurer has no statutory duty to settle third-party claims against its insured, then what do they say? No answer. It would be better to simply overrule *Garcia* as wrong than to pretend as if its words mean nothing. The Court cannot hold the Legislature strictly to the language of statutes and parties to the language of contracts and then fudge on the language of its own opinions. I doubt the Court would indulge a court of appeals' opinion that said, well, yes, the Supreme Court did say such and so, but we don't think that was its intent. Yet the Court can hardly expect the lower courts to follow its opinions if it is so dismissive of them itself.

My point, though, is that it does not matter in this case what the Court's opinion in *Garcia* means or what the Court intended or whether it was right because

---

6. *Id.* at 845–846.

7. *Id.* at 847 (footnotes omitted).

8. 754 S.W.2d 129 (Tex.1988).

9. 876 S.W.2d at 847, n. 10.

10. *Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.*, 938 S.W.2d 27, 28–29 (Tex. 1996) (per curiam).

11. *Ante* at 260.

today's decision would be the same regardless. Rocor cannot prevail on any claim under article 21.21 because it has not proved that National Union should have settled the wrongful death claims sooner.

The dissent's position, which Rocor does not urge itself, is truly remarkable. According to the dissent, once liability becomes clear, article 21.21 imposes on an insurer a duty to settle *even if the amount of damages is not clear.* It is certainly true that National Union could always have settled the claims against Rocor for the $10 million the plaintiffs demanded, but to penalize an insurer for negotiating $3.7 million off the demand is a twisted application of the law. In the dissent's view, if the amount of damages is stipulated but liability is uncertain, an insurer has no duty to settle, but if liability is stipulated and damages are uncertain, the insurer must settle. This perverse view of settlements cannot be ascribed to the Legislature in enacting article 21.21.

Justice BAKER filed a dissenting opinion, in which Justice HANKINSON joined.

Article 21.21 of the Texas Insurance Code defines an insurer's unfair settlement practice as:

> [F]ailing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.

Today, the Court interprets this statutory claim to mean:

> [T]hat an insurer's liability is not reasonably clear, and liability may not be imposed under article 21.21, unless the insured shows that (1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's

terms are such that an ordinarily prudent insurer would accept it.

*See* 77 S.W.3d 262.

Does anyone see anything wrong with this interpretation? I do, and I dissent.

## I. APPLICABLE LAW

### A. STATUTORY DUTY TO ATTEMPT TO SETTLE

Article 21.21 defines insurer conduct that constitutes unfair competition methods or unfair or deceptive acts or practices. TEX. INS.CODE art. 21.21. Before the Legislature last amended section 16 of article 21.21, the provision read:

> Any person who has sustained actual damages as a result of another's engaging in an act or practice declared in Section 4 of this Article *or in rules or regulations lawfully adopted by the Board under this Article* to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance ... may maintain an action against the person or persons engaging in such acts or practices.

TEX. INS.CODE art. 21.21, § 16 (emphasis added) (amended by Act of June 8, 1995, 74th Leg., ch. 414, § 13, 1995 Tex. Gen. Law 3000–01).

State Board of Insurance Order No. 18663, adopted under article 21.21, prohibits unfair or deceptive practices "as defined by the provisions of the Insurance Code." Tex. Bd. of Ins., Bd. Order No. 18663 (codified at 28 TEX. ADMIN. CODE § 21.3). The Insurance Code, in article 21.21–2, defines an unfair practice as "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear." TEX. INS.CODE art. 21.21–2, § 2(b)(4).

Notably, the 1995 amendments to article 21.21 section 16 eliminated the language

"or in rules or regulations lawfully adopted by the Board under this Article" and added a detrimental reliance requirement for certain claims. TEX. INS.CODE art. 21.21, § 16. Moreover, as shown above, the Legislature amended article 21.21 in 1995 to define an insurer's unfair practice to include "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." TEX. INS.CODE art. 21.21, § 4(10)(a)(ii). Accordingly, article 21.21 now expressly incorporates the unfair settlement practice defined in article 21.21–2, with some limiting language, rather than incorporating that practice through the Insurance Board order and article 21.21–2.

## B. STATUTORY CONSTRUCTION

In construing a statute, our objective is to determine and give effect to the Legislature's intent. *National Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex. 2000); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998). We must first look at the statute's plain and common meaning. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). This is because we presume the Legislature intended the plain meaning of its words. *Allen,* 15 S.W.3d at 527. If the statute is unambiguous, we typically adopt the interpretation the plain meaning of the statute's words and terms support. *Fitzgerald,* 996 S.W.2d at 865. Consequently, when a statute's language unambiguously establishes the Legislature's intent, we do not use extrinsic aids to find an intent the statute does not express. *See Allen,* 15 S.W.3d at 527; *Fitzgerald,* 996 S.W.2d at 865. Statutory construction issues are legal questions we review *de novo. Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989).

Courts must determine a statute's intent to give full effect to all its terms. *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984). However, "[courts] are not the law-making body. They are not responsible for omissions in legislation." *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920); *see also RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985). Courts must enforce the laws as the Legislature enacts them, because, "when [courts] stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be." *Fitzgerald,* 996 S.W.2d at 866.

## C. JNOV STANDARD

A trial court may grant a motion for judgment notwithstanding the verdict if there is no evidence upon which the jury could have made the findings relied upon. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987); *Dowling v. NADW Mktg., Inc.,* 631 S.W.2d 726, 728 (Tex.1982); *Dodd v. Texas Farm Prods. Co.,* 576 S.W.2d 812, 814 (Tex.1979). In reviewing a trial court's judgment notwithstanding the verdict, we view all the evidence in a light most favorable to the party against whom the trial court entered the judgment, and we indulge "every reasonable intendment deducible from the evidence ... in that party's favor." *Dowling,* 631 S.W.2d at 728; *see also Exxon Corp.,* 726 S.W.2d at 19; *Dodd,* 576 S.W.2d at 814. When more than a scintilla of competent evidence exists to support the jury's findings, the reviewing court should reverse a judgment notwithstanding the verdict. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990).

## II. ANALYSIS

### A. THE STATUTORY LIABILITY STANDARD

The pre–1995 version of articles 21.21 and 21.21–2 apply in this case. Under

those provisions, the Court correctly concludes that an insured, such as Rocor, has a cognizable claim under article 21.21 against National Union, Rocor's insurer, for unfair settlement practices. *See* 77 S.W.3d at 258–59 (discussing *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 147–50 (Tex.1994); *Texas Farmers Ins. Co. v. Soriano,* 881 S.W.2d 312, 317 (Tex.1994); *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 847 (Tex.1994)).

However, the Court's holding about the elements necessary to prove an insurer's unfair settlement practice is clearly wrong. *See* 77 S.W.3d at 60. In determining the statutory liability standard, the Court impermissibly leaps into the legislative realm and completely eliminates a duty and claim the Legislature expressly created. *See Simmons,* 220 S.W. at 70; *RepublicBank Dallas,* 691 S.W.2d at 607.

National Union contends that, because article 21.21 does not define the liability standard, the Legislature intended that courts apply the common-law *Stowers* standard. *See* Tex. Ins.Code art. 21.21, §§ 4(1)(a)(ii), 16; art. 21.21–2, § 2(b)(4). *Stowers* provides that an insured may sue its insurer for negligently failing to settle a third party's claim against the insured. *See G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved). However, an insurer's common-law *Stowers* duty is triggered only when: (1) the claim against the insured is within the scope of the policy's coverage; (2) the suing third party makes a settlement demand within the policy limits; and (3) the demand's terms are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's *potential* exposure *to* an excess judgment. *Garcia,* 876 S.W.2d at 849 (discussing *Stowers,* 15 S.W.2d at 547).

Remarkably, the Court embraces National Union's position that the *Stowers* standard applies to the statutory claim raised here. Specifically, the Court holds that:

> [A]n insurer's liability is not reasonably clear, and liability may not be imposed under article 21.21, unless the insured shows that (1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's exposure to an excess judgment.

*See* 77 S.W.3d at 262. Thus, the Court engrafts onto the statutory liability standard the *Stowers* liability standard as necessary elements to prove that the insured's liability is reasonably clear and that liability may be imposed.

I agree that article 21.21 implies that the policy must cover the claim and that the insured's liability to the third party must be reasonably clear to trigger the statutory duty. However, the Court's basis for determining that the other *Stowers* factors apply is not persuasive and exceeds the statute's boundaries. The Court should apply our well-established statutory construction rules to ascertain the Legislature's intent and to interpret and apply article 21.21. *See Allen,* 15 S.W.3d at 527; *Fitzgerald,* 996 S.W.2d at 865; *Liberty Mut. Ins.,* 966 S.W.2d at 484. And, if the statute unambiguously demonstrates the Legislature's intent and thus the statute's meaning, the Court must not resort to extrinsic aids to hypothesize about an intent the statute does not express. *See Allen,* 15 S.W.3d at 527; *Fitzgerald,* 996 S.W.2d at 865.

When Rocor sued National Union, article 21.21–2 prohibited insurers from *"not*

*attempting* in good faith" to effectuate settlement when "liability has become reasonably clear." Tex. Ins.Code art. 21.21–2, § 2(b)(4) (emphasis added). The statute's plain and common language evidences the Legislature's intent to impose a duty on insurers to take good faith action when liability becomes reasonably clear. *See* Tex. Ins.Code art. 21.21–2, § 2(b)(4); *Allen,* 15 S.W.3d at 527; *Fitzgerald,* 996 S.W.2d at 865. In other words, the statute requires insurers to take good faith affirmative steps to effectuate a settlement once liability becomes reasonably clear. I believe the statute's plain language limits the statutory liability standard to these elements.

In contrast, the common-law *Stowers* duty requires insurers to accept reasonable settlement demands within policy limits that an ordinarily prudent insurer would accept, considering the insured's potential exposure to a judgment exceeding the policy limits. *Garcia,* 876 S.W.2d at 848–49. Thus, the *Stowers* standard does not impose an affirmative duty on insurers until the suing party makes a settlement demand that an ordinarily prudent insurer would accept. *See Garcia,* 876 S.W.2d at 849. Moreover, under *Stowers,* the insurer only has a duty to accept a settlement demand if an ordinarily prudent insurer would do so under the circumstances. This purely objective standard differs significantly from the good faith standard that expressly applies to the insurer's statutory duty. Indeed, this Court has defined "good faith" differently in other contexts after recognizing that a good faith standard differs from a negligence standard. *See, e.g., Wichita County, Texas v. Hart,* 917 S.W.2d 779, 784 (Tex.1996) (holding that "good faith" in the Whistleblower Act context encompasses subjective and objective components); *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998) (discussing

"good faith" definitions in various contexts); *see also* Tex. Bus. & Com.Code § 2.103 (defining a merchant's "good faith" in the sales context as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade").

Despite the obvious distinctions between an insurer's common-law *Stowers* duty and article 21.21's statutory duty, the Court holds that the *Stowers* liability standard applies regardless of which duty the insurer allegedly breached. Thus, the Court flagrantly disregards our rule that, when a statute unambiguously expresses the Legislature's intent, as it does here, we must not use extrinsic aids, such as the common law, to find an intent the statute does not express. *See Allen,* 15 S.W.3d at 527; *Fitzgerald,* 996 S.W.2d at 865. Under the Court's holding, when liability is reasonably clear, as the jury concluded in this case, the insurer does not risk statutory liability if it fails or refuses to solicit a settlement (read: fails or refuses to attempt in good faith to effectuate settlement). Rather, the insurer need only wait until the suing party makes a settlement demand within policy limits that an ordinarily prudent insurer would accept under the circumstances. The Court's holding thus renders the statutory duty meaningless.

The Court explains that applying the *Stowers* liability standard to the statutory duty "promotes uniformity and prevents insurers from facing conflicting liability standards." *See* 77 S.W.3d at 261. But the Court's rationale lacks a firm foundation and instead rests on "sinking sand." This is because the Court's rationale ignores the separate and distinguishable duties an insurer has under the statute and *Stowers.* And it fails to acknowledge that the statutory duty and *Stowers* duty clearly serve different purposes.

On one hand, the statutory duty prohibits insurers from sitting back, prolonging a dispute's resolution, and causing an insured to sustain actual damages—such as the additional defense costs Rocor incurred here—once liability becomes reasonably clear. The statutory standard also protects an insured from suffering substantial reputation, business, and personal damages that pending litigation may cause.

On the other hand, the *Stowers* duty mandates that insurers accept a reasonable settlement demand that an ordinarily prudent insurer would accept. *Garcia*, 876 S.W.2d at 848–49. Whether liability became reasonably clear is of no moment for triggering the *Stowers* duty. Thus, the *Stowers* standard protects an insured from litigating a claim that may or may not have merit, but, because of the circumstances, could expose the insured to significant liability that exceeds the policy limits. Indeed, an insured who establishes that an insurer breached the *Stowers* duty may recover, as a matter of law, the amount in the judgment rendered against the insured that exceeds the applicable policy limits. *See, e.g., Allstate Ins. Co. v. Kelly*, 680 S.W.2d 595, 606 (Tex.App.-Tyler 1984, writ ref'd n.r.e.).

Furthermore, the Court's holding that the *Stowers* liability standard applies to the statutory duty flies in the face of this Court's statement in *Garcia* that "breach of the *Stowers* duty does not constitute a violation of article 21.21 or the DTPA." *Garcia*, 876 S.W.2d at 847. The Court attempts to negate this statement's importance. But the Court does so only when discussing *Garcia's* impact on whether an insured has an article 21.21 claim for damages it incurred, because its insurer engaged in unfair settlement practice regarding a third party-claim. *See* 77 S.W.3d at 260. The Court does not, and cannot,

explain why this statement from *Garcia* does not preclude the Court from now conflating the distinguishable *Stowers* and statutory duties.

Additionally, the Court mischaracterizes my position when it states that, under my view, liability is reasonably clear within the statute's meaning if the insured "clearly caused the third party's injuries." *See* 77 S.W.3d at 262. The Court explains that, under my view, "an insurer could be held liable for failing to settle even if the amount of the injured third party's damages were unknown or unclear." *See* 77 S.W.3d at 262. This is absolutely incorrect. First, the Court's analysis fails to appreciate the distinct difference between liability and damages. No language in the statute suggests that the exact amount of damages due must be reasonably clear before the insured has a duty to attempt in good faith to effectuate settlement. Second, as discussed above, the statute expressly imposes a duty on the insured to take affirmative steps when "liability has become reasonably clear," while the *Stowers* duty only requires insurers to accept reasonable settlement demands. The Court claims that its holding that the *Stowers* liability standard applies to the statutory standard "is consistent with the statutory purpose the dissent identifies, because it is expressly intended to encourage swifter dispute resolution." *See* 77 S.W.3d at 262 (citing *Garcia*, 876 S.W.2d at 851 & n. 18). But this statement wholly disregards that my position encourages dispute resolution even more than the Court's holding, because the Court entirely eliminates a separate and distinct statutory settlement duty on the insurer.

In sum, despite the statute's unambiguous, plain language, the Court assumes it can *carte blanche* reinvent the liability standard for violating the statutory duty. Courts must enforce laws as the Legisla-

ture enacts them. *See Fitzgerald,* 996 S.W.2d at 866; *Simmons,* 220 S.W. at 70. To do otherwise, as the Court does here, is to encroach on the constitutional provisions endowing the Legislature with the sole authority to create our law. *See* TEX. CONST. art. 2, § 1; art. 3, § 1; *Fitzgerald,* 996 S.W.2d at 866; *Simmons,* 220 S.W. at 70. I would hold that an insured establishes liability under the statute if, under the statute's plain language, the insurer did not attempt in good faith to effectuate a prompt, fair, and equitable settlement once liability became reasonably clear.

### B. JNOV REVIEW

There is more than a scintilla of evidence to support the jury's conclusion that National Union failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement once liability became reasonably clear. *See Exxon Corp.,* 726 S.W.2d at 19; *Dowling,* 631 S.W.2d at 728; *Dodd,* 576 S.W.2d at 814. There is evidence that the attorneys for Rocor and National Union agreed, from very beginning, that the suit exposed Rocor to significant liability. Further, in January 1990, National Union advised Rocor that liability would likely reach the excess insurance coverage it provided. From that time, National Union decided it would take over the settlement efforts. And there is evidence that one year before the settlement, National Union's attorney assessed liability at almost exactly the amount for which the case eventually settled. Consequently, there is evidence to support the jury's finding that liability became reasonably clear as the statute requires to establish an insurer's liability.

Furthermore, though National Union took over settlement negotiations once it acknowledged Rocor's liability would trigger the excess policy coverage, National Union halted mediation efforts after it as-sumed settlement authority. And, then, National Union made settlement offers in amounts significantly below the assessed liability. In fact, National Union's first settlement offer reflected that National Union would not have to pay any money, because Rocor's other insurers would have covered the smaller amounts National Union offered. Moreover, there is evidence that Rocor's defense attorney advised Rocor and National Union that detrimental evidence existed, and thus, National Union should quickly settle to avoid defense costs. National Union's attorney acknowledged that National Union benefitted from the delayed settlement because it continued to earn interest on investments. Assuming the good faith standard encompasses both an objective and subjective element, this evidence supports a jury finding that National Union lacked both. And, though no ideal time period in which parties must reach settlement exists, there is evidence that Rocor incurred legal expenses to prepare for trial because National Union delayed settling long after liability became reasonably clear. Therefore, viewing all the evidence in a light most favorable to Rocor, the jury could conclude that National Union failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement. *See Mancorp,* 802 S.W.2d at 228.

There is more than a scintilla of evidence to support the jury's conclusion that National Union violated the statutory duty article 21.21 clearly establishes. Consequently, the trial court erred in granting the judgment notwithstanding the verdict. *See Mancorp,* 802 S.W.2d at 228; *Exxon Corp.,* 726 S.W.2d at 19; *Dowling,* 631 S.W.2d at 728; *Dodd,* 576 S.W.2d at 814.

### C. OTHER ISSUES AND DISPOSITION

#### 1. ELECTION OF REMEDIES

Rocor pleaded more than one recovery theory. But under the election-of-reme-

dies doctrine, Rocor could elect to recover the greatest relief under any theory that the verdict supports. *See Bradley's Elec., Inc. v. Cigna Lloyds Ins. Co.,* 995 S.W.2d 675, 677 (Tex.1999). Here, Rocor has elected to recover under article 21.21, which affords greater recovery than ordinary negligence. Consequently, the trial court's judgment notwithstanding the verdict may be reversed on this basis, and the Court need not consider National Union's argument that the court of appeals erred in rendering judgment on the jury's negligence finding.

## 2. CHARGE ERROR

National Union argues that, even if the Court concludes that Rocor has a statutory claim, it should remand the case for a new trial based on the alleged erroneous jury charge. National Union contends that the broad-form liability question submitted two unfair deceptive act theories—misrepresentation and unfair settlement practice—and the misrepresentation theory is legally invalid.

But National Union did not object to the charge on the basis that it included an invalid legal theory. Instead, National Union argued only that Rocor lacked standing to maintain a claim under article 21.21 for unfair settlement practices. A party's objection to the charge must be timely and specific. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388–89 (Tex.2000). Accordingly, National Union did not preserve its argument that the broad-form liability question improperly submitted an invalid legal theory. *See* TEX.R.APP. P. 33.1(a).

However, National Union did object to the trial court's submitting the misrepresentation theory because it lacked an evidentiary basis. Applying a traditional harm analysis, I conclude that the record—including the pleadings, the evidence, and the entire charge—does not demonstrate that the unsupported misrepresentation theory probably caused rendition of an improper judgment or prevented National Union from properly presenting the case on appeal. TEX.R.APP. P. 61.1; *see also Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995) (A charge with an erroneous instruction was not harmful because nothing in the record showed the jury based its verdict on the instruction.); *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986) (In determining if an alleged charge error is reversible, the reviewing court must determine if, under the entire case's circumstances, the error was reasonably calculated and probably did cause an improper judgment.).

## 3. ATTORNEY'S FEES

When Rocor sued National Union, article 21.21 section 16 permitted, as it does today, a plaintiff to recover reasonable and necessary attorney's fees. *See* TEX. INS. CODE art. 21.21, § 16. The jury awarded Rocor reasonable and necessary attorney's fees on a percentage basis-forty percent.

While Rocor's appeal was pending in the court of appeals, we decided *Arthur Andersen & Co. v. Perry Equipment Corp.,* 945 S.W.2d 812 (Tex.1997). In that case, we held that a plaintiff seeking attorney's fees under the DTPA must prove the attorney's fees were reasonable and necessary to the case's prosecution and must ask the jury to award the fees in a specific dollar amount, not as a percentage of the judgment. *Arthur Andersen Co.,* 945 S.W.2d at 818–19. Consequently, National Union argued in the court of appeals that *Arthur Andersen* applied to preclude Rocor's recovering the percentage attorney's fees awarded.

To preserve a complaint for appellate review, an appellant must object and ob-

274

tain a ruling from the trial court. Tex.R. Civ. P. 274; Tex.R.App. P. 33.1(a). Here, National Union did not object to the form of the attorney's fees question or to an award of attorney's fees on a percentage basis. Accordingly, National Union waived any objection to the percentage attorney's fee question, and thus, Rocor may recover the attorney's fees awarded.

### 4. Disposition

Rocor has a cognizable claim under article 21.21 section 16 for unfair settlement practices, and the evidence supports the jury's liability finding on this claim. Additionally, Rocor has elected to recover under this theory, which affords greater relief than the negligence theory the court of appeals upheld. Thus, the Court should reverse the court of appeals' judgment and remand the case to the trial court to enter judgment consistent with the jury's verdict and the applicable statute.

### III. CONCLUSION

Today, the Court combines two distinct duties for insurers—one from the common law and the other from a statute—to create a cause of action that exists neither in the common law nor in the statute. In doing so, the Court ignores the statute's plain meaning, engrafts language into the statute that does not exist, and refuses to give effect to the Legislature's intent. Well over one hundred years ago, this Court recognized the long-standing rule: "It is the duty of a court to administer the law as it is written, and not to make the law." *Turner v. Cross,* 83 Tex. 218, 18 S.W. 578, 579 (1892). This legislative act from the bench eviscerates the statutory claim. Accordingly, I dissent.