# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2020

Lyle W. Cayce
Clerk

No. 19-20779

American Guarantee and Liability Insurance Company,

*Plaintiff—Appellee*,

*versus*

ACE American Insurance Company,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-382

---

Before Jolly, Jones, and Willett, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:

Mark Braswell died after his road bike collided with a stopped truck. His survivors (the Braswells) sued the truck's owner, the Brickman Group Ltd., LLC. Brickman was primarily insured by ACE and secondarily insured by AGLIC. ACE rejected three Braswell settlement offers before and during trial, and the jury awarded the Braswells nearly $28 million. The Braswells and Brickman eventually settled for nearly $10 million, of which AGLIC, the excess carrier, paid nearly $8 million. AGLIC sued ACE, arguing that

because ACE violated its *Stowers*[1] duty to accept one of the three settlement offers for the primary policy limits, ACE had to cover AGLIC's settlement contribution. The district court agreed on both counts. We agree that ACE's *Stowers* duty was triggered by the Braswells' third offer, and that ACE violated this duty. The district court's judgment is affirmed.

## I.

At trial the Braswells[2] asserted Brickman caused Mark's death under two negligence theories: (1) Brickman's driver stopped short directly in front of Mark, and (2) Brickman's truck was parked in an inherently dangerous spot. But premised on the substantial evidence of Mark's comparative negligence, Brickman's counsel believed it had a strong case in defense. Brickman was primarily insured by ACE (up to $2 million in liability), with excess coverage by AGLIC (up to $10 million in liability *in excess* of ACE's $2 million). ACE controlled Brickman's settlement negotiations.

The facts were disputed. There was evidence that Brickman's truck had been stopped for four or five minutes, or one to two minutes, or that it had actually stopped short in front of Mark.[3] No orange cones had been placed around the truck despite Brickman's policy of using safety cones. Significantly, Mark's helmet was cracked down the middle, indicating he was not watching where he was going. Brickman's driver admitted it was dangerous, though legal, to park where he did. Moreover, Brickman's witnesses were far less compelling and sympathetic than members of the Braswell family. Finally, the trial judge was known to be plaintiff-friendly, and the Braswells' lawyer was well known and highly capable.

Considering these factors, Brickman's counsel mocked up the "value" of the Braswell case for settlement purpose, i.e., how much should

---

[1] *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929)) [hereinafter *Stowers*].

[2] Mark's mother (Sandra Braswell), wife (Michelle Braswell), and two children (Matthew and Mary Braswell).

[3] Notably, this theory was only supported by a Brickman employee's, Renner's, statement to Michelle Braswell.

ACE agree to settle for.  Counsel estimated $1.25 to $2 million.  ACE also conducted juror research that yielded two conclusions: it was important to prove at trial that the truck did not stop short and that the truck was legally parked.[4]  After reviewing this material, AGLIC's case manager valued a "risk neutral" settlement at "no more than 500K, not primary's 2M."[5]  No one on the defense side thought a verdict over $2 million was likely.

On the eve of trial, the Braswells' counsel made the first of three settlement offers, asking for $2 million.  ACE counter-offered $500,000. The Braswells rejected this counter, and the parties went to trial.  Events quickly turned against Brickman.  The judge: excluded evidence that Brickman's truck was legally parked; allowed Michelle Braswell to testify about the "stop-short" statement of a Brickman employee; and allowed Michelle to testify about her daughter Mary's psychological trauma, self-harm, suicide attempts, and hospitalization, all caused by her father's death.  Michelle was an exceptional witness.  After the plaintiffs' closing statement, AGLIC's case manager communicated that a verdict in excess of $2 million was possible "[g]iven the adverse evidentiary . . . rulings."

The case was submitted to the jury.  Before the jury reached a verdict, the Braswells' counsel made two more settlement demands.  First, he orally offered Brickman a high/low of "$1.9MM to $2.0MM with costs."  ACE believed this offer was outside of its settlement valuation, as the inclusion of "costs" would push the final settlement value beyond its $2 million policy limit.  Brickman rejected the offer.  Then the Braswells' counsel emailed a third offer to Brickman's counsel:

> Plaintiffs renew their prior offer to settlement for the policy limits of $2 million. Such offer will expire when the jury announces that it has a verdict. Thanks much.[6]

---

[4] In these focus groups over three-fourths of the jurors found Mark more than 50% comparatively negligent.

[5] This same manager was also effusive about Brickman's chances of success at trial.

[6] ACE identified this offer as a renewal of the Braswell's first offer.

Brickman declined that offer and countered; the Braswells withdrew all offers.

The next day the jury returned a verdict of nearly $40 million. After deducting 32% for Mark's comparative negligence, the trial court rendered judgment against Brickman for nearly $28 million. The Braswells and Brickman eventually settled for nearly $10 million (avoiding appellate litigation). ACE paid its policy limit of $2 million, and AGLIC furnished the excess amount of nearly $8 million.

AGLIC then sued ACE in federal court for equitable subrogation,[7] urging ACE had violated its *Stowers* duty to Brickman by rejecting the Braswells' settlement offers. Ruling on dueling summary judgment motions, the district court held that "all three demands" invoked the *Stowers* duty. Then, following a bench trial, the court held that the first rejection was reasonable under *Stowers* but the last two were not. From the resulting judgment for the entirety of AGLIC's excess payment, ACE has appealed.

## II.

"We review grants of summary judgment de novo," affirming "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] When reviewing a bench trial judgment, we inspect findings of fact for clear error and review legal conclusion de novo.[9] Sitting in diversity, we apply Texas substantive law.[10]

On appeal, ACE raises two issues. First, it asserts, the court erred by holding that all three offers triggered *Stowers*.[11] AGLIC doesn't cross-appeal

---

[7] ACE doesn't contest AGLIC's ability to sue under equitable subordination. *Compare Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999).

[8] *Petzold v. Rostollan*, 946 F.3d 242, 247 (5th Cir. 2019) (internal quotations omitted); Fed. R. Civ. P. 56(a).

[9] *Colonial Penn Ins. v. Mkt. Planners Ins. Agency Inc.*, 157 F.3d 1032, 1037 (5th Cir. 1998).

[10] *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014).

[11] And, since no *Stowers* duty arose, the subsequent bench trial judgment that ACE violated its *Stowers* duty is moot.

the court's holding that ACE fulfilled its Stowers duty for the first offer; any argument regarding this offer is forfeited and we don't address it further.[12] Second, the court erred in determining that ACE violated *Stowers* by rejecting the second and third settlement offers.[13] We address each contention in turn.

## A.

Under Texas law, the *Stowers* duty requires an insurer "to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits."[14] But not all settlement demands give rise to a *Stowers* duty.[15] "The *Stowers* duty is not activated by a settlement demand unless: (1) the claim against the insured is within the scope of coverage, (2) there is a demand within policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment."[16] Further, *Stowers* applies only when "the settlement's terms [are] clear and undisputed."[17] The offer "must also be unconditional" and cannot "carry[] risks of further liability."[18] For *Stowers* to apply in this case, the Braswells' offers must have met the three *Stowers* prerequisites,[19]

---

[12] *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

[13] AGLIC doesn't cross-appeal the court's holding that ACE fulfilled its *Stowers* duty for the first offer; any argument regarding this offer is forfeited and we don't address it further. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

[14] *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 843 n.2 (Tex. 1994) (citing *Stowers*, 15 S.W.2d 544).

[15] *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 41 (Tex. 1998) ("A demand above policy limits, even though reasonable, does not trigger the *Stowers* duty to settle." (internal quotations omitted)).

[16] *Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 314 (Tex. 1994).

[17] *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg*, 77 S.W.3d 253, 263 (Tex. 2002).

[18] *Danner v. Iowa Mut. Ins. Co.*, 340 F.2d 427, 429–30 (5th Cir. 1964); *Soriano*, 881 S.W.2d at 314 (stating that, for an offer to invoke *Stowers*, it must "propose to release the insured fully in exchange for a stated sum of money").

[19] *Soriano*, 881 S.W.2d at 314.

"clearly state[d] a sum certain,"[20] and been "unconditional."[21]

The district court held that all three demands were "unconditional, within policy limits, and presented an offer for a full release," thus triggering *Stowers*. We disagree regarding the second offer, but the third offer did trigger a *Stowers* duty.[22]

The Braswells' second offer sought "$1.9MM to $2.0MM *with costs*." The question raised is whether that offer was ambiguous. Unless the offer "clearly state[s] the proposed settlement's terms," the insurer cannot transgress *Stowers* by rejecting it.[23] The record here indicates that the requested "costs" were ambiguous. ACE believed "costs" included litigation expenses and court costs. In contrast, AGLIC believed "costs" were limited to court costs. AGLIC even acknowledged in its briefing that ACE was confused as to what "costs" meant,[24] and AGLIC's case manager acknowledged that "costs" could have more than one meaning. Accordingly, "the record reveals great confusion about that offer's terms," and, lacking the clear statement of a sum certain, the offer did not invoke *Stowers*.[25]

The third offer, however, stated:

> On behalf of Michelle Lynn Braswell, Individually, and as Next Friend of Matthew Braswell and Mary Braswell and as Independent Executrix of the Estate of William Markley Braswell, deceased, and Sandra South Bra[s]well ("Plaintiffs"), I am writing to convey an unconditional offer to

---

[20] *Rocor Int'l, Inc.*, 77 S.W.3d at 263.

[21] *Danner*, 340 F.2d at 429–30.

[22] Again, the first offer is not at issue on appeal. *See supra* note 13.

[23] *Rocor Int'l, Inc.*, 77 S.W.3d at 263; *see also Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007).

[24] "AGLIC alleges ACE mistakenly believed 'costs' included litigation expenses and therefore the demand exceeded its policy limits."

[25] 77 S.W.3d at 263. We need not reach AGLIC's ancillary arguments concerning this offer.

settle all claims against The Brickman Group Ltd. and Guillermo Rafael Bermea ("Defendants").

. . . Please be advised that Michelle and Sandra Braswell hereby make this unconditional offer to settle within the primary policy limits represented to us to be applicable to any judgment rendered in this case to settle any and all claims that were asserted or could be asserted in the above-referenced matter for the total sum of $2,000,000.00.

ACE advances three arguments why the third offer did not generate a *Stowers* duty, but only one requires discussion.[26] It goes as follows: because Michelle asserted claims alongside her minor children, whom she represented as next friend, this generated adverse interests and mandated at least court and perhaps guardian ad litem approval of any settlement. Therefore, "[t]hese requirements of third-party approval for a settlement made the plaintiffs' demand inherently conditional." Because no Texas court has ruled on this issue in the *Stowers* context, we must make an *Erie* guess.[27]

---

[26] Contrary to ACE's contention, this offer is not partial and proposes to settle all claims from all plaintiffs. The offer states it was made "[o]n behalf of Michelle Lynn Braswell," both "Individually, and as Next Friend of Matthew Braswell and Mary Braswell." When the second paragraph states that "Michelle and Sandra Braswell hereby make this unconditional offer to settle," this court considers Michelle to include herself both "Individually, *and as Next Friend of Matthew Braswell and Mary Braswell*." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citation omitted) (providing that Texas courts "give effect to all of the words and provisions so that none is rendered meaningless"). Second, the phrase "within the primary policy limits represented to us to be applicable" does not contain conditional phrasing, and again contrary to ACE's position, is best characterized as a statement of fact, not an unmet condition precedent. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) ("In order to make performance specifically conditional, a term such as 'if.' 'provided that,' 'on condition that,' or some similar phrase of conditional language must normally be included."); *cf. Wilcox v. Am. Home Assurance Co.*, 900 F. Supp. 850, 859 (S.D. Tex. 1995) (holding "based upon" was sufficiently conditional); *Ins. Corp. of Am. v. Webster*, 906 S.W.2d 77, 80–81 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (same for "[i]n reliance upon").

[27] *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019) ("If the Texas Supreme Court has not ruled on an issue, we make an *Erie* guess, predicting what the Texas Supreme Court would do if faced with the same facts." (cleaned up)).

Serving as her children's next friend in the underlying lawsuit, Michelle asserted claims for herself and them against Brickman, but their claims were distinct from each other. The third settlement offer covered all of these claims, but it did not specify which plaintiffs would get what percent of the $2 million.

In Texas, "[a] minor does not have the legal capacity to employ an attorney or anyone else to watch over her interests . . . . [Instead] Rule 44 of the rules of civil procedure authorizes appearance by a next friend."[28] "If an adverse interest arises between the real plaintiff and next friend, the next friend is no longer competent to represent the minor."[29] "If the court determines that a conflict exists, the court must appoint a guardian ad litem."[30] If no guardian ad litem is appointed when required, "a judgment entered in favor of a minor . . . is not binding on him, and he may thereafter sue to have it set aside."[31] And even if a guardian is properly appointed and agrees to the settlement, "a judgment ratifying the compromise cannot be rendered without a hearing and evidence that the settlement serves the minor's best interest."[32]

The Texas courts thus hold that if the third settlement offer had been accepted and *if* the trial court perceived an adverse interest between Michelle and her children,[33] the trial court would have had to appoint a guardian ad litem who, along with the court, had to approve the settlement in order to

---

[28] *Byrd v. Woodruff*, 891 S.W.2d 689, 704 (Tex. App.), *writ denied* (May 4), *writ dismissed by agreement* (Sept. 28), *writ withdrawn* (Sept. 28, 1995).

[29] *Id.; see also Missouri-Kansas-Texas R. Co. v. Pluto*, 138 Tex. 1, 6 (Tex. Comm'n App. 1941).

[30] *Byrd*, 891 S.W.2d at 705; *Ford Motor Co. v. Stewart, Cox, & Hatcher, P.C.*, 390 S.W.3d 294, 297 (Tex. 2013).

[31] *Howell v. Fifth Court of Appeals*, 689 S.W.2d 396, 398 (Tex. 1985) (Gonzalez, J. dissenting).

[32] *Byrd*, 891 S.W.2d at 705.

[33] Tex. R. Civ. Proc. 173.

bind the minors.[34]  Texas courts have not explicitly determined whether the uncertainty about judicial and third-party approval necessarily creates an unacceptable "risk[] of further liability" that precludes a *Stowers* duty.[35] Moreover, whether the third settlement offer was inherently conditional (as ACE contends) depends here on hindsight, *i.e.,* whether the offer, if accepted, would have generated an adverse interest between Michelle and her children.

ACE relies on several cases to support its contention that "[a] conflict of interest between the minor and next friend *often* arises in a settlement situation where the parties vie for different portions of a fixed settlement amount."[36]  In *Howell*, for instance, a mother (among other parties) sued on behalf of herself and as next friend for minor children to recover  for her husband's death.[37]  After a settlement was negotiated and agreed upon, the court appointed a guardian ad litem for the children because it found adverse interests between the mother and the minors.  The mother immediately nonsuited the case.  The Texas Supreme Court did not rule on a mandamus order, which had become moot.  But the record probably supported appointment of a guardian ad litem because "the mother, who was twenty-five years old, was given over 90% of the proposed settlement value."[38]

---

[34] *Howell*, 689 S.W.2d at 398 (Gonzalez, J. dissenting).

[35] *Danner*, 340 F.2d at 430; *cf. Jones v. Highway Ins. Underwriters*, 253 S.W.2d 1018, 1022 (Tex. Civ. App. 1952), *writ refused* n.r.e.(finding a settlement offer conditional, and not controlled by *Stowers*, because an intervenor with claim to 50% of plaintiffs' damages had to approve settlement).

[36] *Byrd*, 891 S.W.2d at 705 (emphasis added); *Howell*, 689 S.W.2d at 398 (Gonzalez, J., dissenting) ("When a parent sues on his or her own behalf and also as a representative of minor children for injuries arising out of the same occurrence a conflict of interests between the two often arises, particularly in a settlement situation where the parties vie for different portions of a fixed settlement amount.").

[37] 689 S.W.2d at 396–97.

[38] *Id.* at 398 (Gonzalez, J., dissenting).

In *Pluto*, a mother was killed in an accident and her son injured.[39] The father, acting as his son's next friend, quickly settled with the railroad for the father's injuries and the son's loss of his mother, but the settlement did not compensate the son for his personal injuries. Later on, the son sued the railroad company to set aside the settlement. The reviewing court agreed to do so because "[t]he record shows without dispute that the father, while acting as next friend, was interested in the settlement agreement adversely to his children," and the railroad had notice of the father's adverse interests when they settled.[40] A similar result occurred in *Gallegos v. Clegg*.[41]

Although Michelle here asserted her own distinct claims alongside her children's, that is where the similarities among *Howell*, *Pluto*, and *Gallegos* and this case end. There is no evidence that the settlement offer was more favorable to Michelle than her children or that Michelle was operating with interests adverse to those of her children.[42] ACE offers nothing in the record suggesting that, had the third settlement offer been accepted, Michelle would have placed maximizing compensation for her own injuries above her children's claims.[43] In such circumstances, of course, the trial court would

---

[39] 138 Tex. at 5.

[40] *Id.* ("[S]ome of the minor children (brothers and sisters of Julius) were not injured in the collision and in the judgment were awarded the same amount as was Julius, i.e., $750.").

[41] 417 S.W.2d 347, 352–53 (Tex. Civ. App. 1967), *writ refused* n.r.e. (Oct. 18, 1967) (finding an adverse interest because the record showed "[the father] was trying to recover as much as he could on account of his own alleged injuries and at the same time represent his minor son on account of injuries suffered by him in the same collision"); *see also Clark v. McFerrin*, 760 S.W.2d 822, 828 (Tex. App.), *writ denied* (Apr. 19, 1989) (holding that, because the children "and their mother . . . were parties in the same lawsuit," and the children "had claims separate and distinct from their mother, their next friend," "a conflict in interest could have arisen during settlement negotiations or the prosecution of the suit . . . [and the] trial court d[id] not abuse its discretion in appointing a guardian ad litem."); *Coleman v. Donaho*, 559 S.W.2d 860, 864 (Tex. Civ. App. 1977), *writ dismissed* (Mar. 22, 1978) (same).

[42] *Cf. Howell*, 689 S.W.2d at 396–97. Let alone that Brickman *knew* Michelle was operating with interests adverse to her children. *Cf. Pluto*, 138 Tex. at 5.

[43] *Cf. Gallegos*, 417 S.W.2d at 352–53.

not have erred if it had appointed a guardian ad litem.[44]  But despite the caution that state courts observe when considering the rights of minors, we do not read Texas law to *require* guardian ad litem appointment—and thus third-party approval—in this or every case where a parent serves as next friend for her children.  And because such appointments are not required, we cannot conceive that every settlement generated in a case involving claims of a parent on behalf of herself and children violates *Stowers* because of a bare potential conflict of interest.

Because the record is void of any specter of adverse interests between Michelle and her children had the third lump sum settlement offer been accepted, her children would have been bound by it.  Accordingly, the offer generated a *Stowers* duty because it "proposed to release the insured fully" and  it was not conditional.[45]

## B.

ACE also contends that the district court erred in concluding that ACE violated its settlement duty as to the third offer.  Under *Stowers*, an insurer is required to exercise ordinary care in responding to qualifying settlement demands; when presented with a "settlement demand[] within policy limits," an insurer cannot respond negligently.[46]  Whether an insurer responds negligently hinges on whether "the terms of the demand are such

---

[44] *Cf. Clark*, 760 S.W.2d at 828; *Coleman*, 559 S.W.2d at 864.

[45] *Soriano*, 881 S.W.2d at 314.

[46] *Garcia*, 876 S.W.2d at 846, 848 (stating that an insurer is not negligent if it "exercise[s] [the] degree of care and diligence" of "an ordinarily prudent person" in response to a settlement offer).  We pause to note the lack of demarcation between whether the *Stowers* duty is triggered (i.e., was the offer reasonable) versus whether the *Stowers* duty, once triggered, is met (i.e., did the insurer reasonably respond to a reasonable offer). *Compare Garcia*, 876 S.W.2d at 848 (providing that *Stowers* is only triggered by reasonable demands), *with Soriano*, 881 S.W.2d at 316 (providing that, once *Stowers* is triggered, an insurer is negligent if it acts unreasonably in refusing to settle).  But we continue under Texas's framework as we understand it:  whether ACE, once its *Stowers* duty was triggered, was negligent in rejecting the *Stowers* offer.

that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment."[47]

Reviewing ACE's response to its *Stowers* duty, the district court reasoned in pertinent part:

> ACE [] breach[ed] its [*Stowers*] duty when it rejected the. . . Third Demand[]. When [the Braswells] made th[is] demand[], ACE was aware of all of the adverse rulings and evidence presented during trial including, most importantly, the extensive evidence about Mary Braswell, Michelle Braswell's testimony about the stop short theory, and [the trial judge's] decision not to allow testimony that the Brickman truck was legally parked and had not received any citations. These rulings, which exacerbated the known weaknesses in the case, should have changed ACE's calculus . . . . A reasonable insurer would have reevaluated the settlement value of the case [and accepted the Braswells' offer].

ACE's challenge in this court hinges solely on whether the trial court's adverse rulings were likely to be reversed on appeal. In other words, although the trial went poorly for ACE and its decision to reject the Braswells' final settlement offer may *appear* unreasonable, ACE was not actually negligent since the trial court's "errors" likely rendered the judgment reversible on appeal. The evidence underlying the district court's factual findings cannot support its judgment, ACE argues, because the district court did not consider ACE's appellate prospects.

ACE omits that the district court did not consider the possibility of appellate reversal because ACE made no such argument. ACE concededly never argued to that court as a legal matter that *Stowers* requires consideration of appellate prospects. ACE cannot raise this novel legal theory for the first time on appeal, and we do not address it.[48] But even if we

---

[47] *Garcia*, 876 S.W.2d at 849.

[48] *Estate of Duncan v. Comm'r of Internal Revenue*, 890 F.3d 192, 202 (5th Cir. 2018) ("This court will not consider arguments first raised on appeal." (citation omitted)). ACE disagrees, urging it can assert this new legal argument on appeal because "a defendant [does not] waive[] a challenge to the sufficiency of the evidence by failing to raise it before

review the evidentiary sufficiency challenge *de novo*,[49] the evidence is clearly sufficient to support the bench trial verdict that "[a] reasonable insurer would have reevaluated the settlement value of the case [and accepted the Braswells' third offer]." After all, by the time that offer was made, the trial had taken a demonstrable turn against Brickman.[50] Two of the adverse rulings (disallowing evidence that the truck was legally parked and allowing the stop-short statement attributed to a Brickman employee) aggravated Brickman's greatest known weaknesses in this case. Considering all of the trial circumstances, an "ordinarily prudent insurer" in ACE's position would have realized that the "likelihood and degree" of Brickman's "potential exposure to an excess judgment" had materially worsened since the trial's inception. When presented with the Braswells' third offer, an ordinary, prudent insurer would have accepted it. The evidence placed before the district court is sufficient to support that ACE violated its *Stowers* duty by failing to reevaluate the settlement value of the case and accept the Braswells' reasonable offer.

## CONCLUSION

The district court's judgment is **AFFIRMED**.

---

a bench trial." *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 573 (5th Cir. 2018) (citation omitted). But sufficiency of the evidence challenges do not include novel legal arguments—we only consider whether "the trial court's findings are supported by substantial evidence." *Transcon. Gas Pipe Line Corp. v. Societe D'Exploitation du Solitaire SA*, 299 F. App'x 347, 349 (5th Cir. 2008) (unpublished) (internal quotations omitted). And such trial court findings, by definition, cannot include legal arguments never even presented in the trial court.

[49] *Colonial Penn Ins.*, 157 F.3d at 1037.

[50] By this point, the judge had excluded evidence about the Brickman truck's legal parking. And the court had allowed Michelle to testify about Renner's out-of-court "stop short" statement. Finally, the judge allowed Michelle's testimony about Mary's psychological issues stemming from her father's death. As the district court explained, the testimony about Mary "was pretty powerful stuff" and had a "real impact on a jury."